**CRAIG et al. v. BOND et al.**
Members of State Elec. Board.

No. 24126.   Opinion Filed Oct. 25, 1932.

Stanley Belden, for plaintiffs.

J. Berry King, Atty. Gen., and Randall S. Cobb, Asst. Atty. Gen., for defendants.

McNEILL, J. This is an original action filed in this court by the plaintiffs, praying for a writ of mandamus directed to the defendants, constituting the State Election Board of the state of Oklahoma, commanding them to place the names of said plaintiffs upon the ballot for the November, 1932, general election as candidates for the Socialist party for the office of presidential and vice presidential electors. Plaintiffs allege in their petition that they are residents and voters of the state of Oklahoma, and that M. Shadid and Seigfried Ameringer are the chairman and secretary of said Socialist party in the state of Oklahoma; that said Socialist party organization was effected on or about July 7, 1932; that said party was not recognized by the state of Oklahoma as a political party until August 24, 1932; that, on or about August 15, 1932, a petition was filed with the Secretary of State, signed by approximately 7,000 voters of the state of Oklahoma, requesting that petitioners be recognized as constituting the Socialist party of the state of Oklahoma; that said petition was approved by the Secretary of State, and that it was the duty of the State Election Board after said petition was filed and approved to recognize the petitioners to be and constitute the Socialist party of the state of Oklahoma; that it was the duty of the State Election Board to place the names of said plaintiffs as the presidential and vice presidential electors of said party upon the official ballots for the November 8, 1932, election; and that said Election Board has refused to place the names of said plaintiffs upon the ballots as nominees of said party for said presidential and vice presidential electors.

The defendants, in their answer, in addition to allegations of a general denial and admission of the facts that the defendants constituted the said Election Board of said state, and the admission of the refusal of said Board to place the names of plaintiffs upon said ballots as presidential and vice presidential electors of said party, specifically alleged that the 11 persons named in plaintiffs' petition did not file with the Secretary of the State Election Board as candidates for the nomination for the Socialist party for the office of pres-

idential and vice presidential electors in the time and in the manner provided by law; that they were never voted upon by members of the Socialist party at any direct primary election held under authority of the laws of the state of Oklahoma, and that said persons have never been issued certificates of nomination by the State Election Board, entitling them to have their names placed upon the ballots as the nominees of said Socialist party for said office of presidential and vice presidential electors for the November, 1932 election.

Said defendants further alleged that, at two successive general elections, the Socialist party failed to receive ten percentum of the votes cast for the political party receiving the highest number of votes in said election, and that the said Socialist party, therefore, in 1930, did not exist as a political party in the state of Oklahoma. Defendants admit the filing of the petition with the Secretary of State signed by approximately 7,000 legal voters of the state of Oklahoma, petitioning the Secretary of State to recognize the socialist party as a political party in the state of Oklahoma; that the same was approved by the Secretary of State on August 24, 1932, and the notification of such approval by the Secretary of State was given the State Election Board; and that, on September 20, 1932, said plaintiffs submitted their application to have their names printed on the official state ballots to be voted on at the general election in November 1932, as candidates for said party for the office of said electors. Said defendants aver that plaintiffs have never shown to the State Election Board who named them as candidates of said party, or how or when they were chosen as such candidates; that, on September 24, 1932, the State Election Board considered the application of plaintiff and denied the same for the reason that the applications were not filed in the time and in the manner provided by law; that they had not been nominated by the voters of the Socialist party at a direct primary election held under the laws of the state of Oklahoma; that there was no authority of the State Election Board to place the names of said persons as such candidates upon the ballots for the general election to be held on November 8, 1932; that plaintiffs had not made timely application for the writ of mandamus; that the contract for printing the ballots was let by the State Board of Affairs on September 24, 1932; that the ballots were then being printed, and that it would be impossible to have the same reprinted in time for the Secretary of the State Election Board

to ship said ballots to the various counties by October 25, 1932, as required by section 16, art. 3, chap. 29, Sess. Laws 1931 [O. S. 1931, sec. 5718]. Defendants pray that the writ of mandamus be denied.

Plaintiffs and defendants entered into a stipulation as to the facts, which is as follows:

"(Caption Omitted.)

"Stipulation as to Facts."

"The parties to this action, the plaintiffs and the defendants, hereby stipulate and agree to the following facts in this case:

"That all of the plaintiffs are legal voters of the state of Oklahoma, and that the defendants constitute the State Election Board of the state of Oklahoma.

"That the plaintiffs have not at any time filed with the Secretary of the State Election Board applications as candidates for the nomination of the Socialist party for the offices of presidential electors; that the plaintiffs have never been voted upon as candidates for the nomination of the Socialist party for the offices of presidential electors at a direct primary election of the Socialist party held under the authority of the laws of the state of Oklahoma, and the said plaintiffs have never been issued certificates of nomination by the State Election Board as the nominees of the Socialist party for the offices of presidential electors.

"That in 1928 the Socialist party at the general election held in the state of Oklahoma in that year failed to receive ten percentum of the votes cast for the Republican party which was the party which received the highest number of votes at said election; that at said 1928 general election the Socialist candidates for presidential electors received 3,924 votes and the Republican candidates for presidential electors received 394,046 votes; that in 1930 there were no filings for state office by any Socialist candidates and no candidates of the Socialist party for state office received any votes in said election, and said Socialist party at said 1930 general election held in the state of Oklahoma failed to receive ten per centum of the votes cast for the Democratic party at said election which was the party receiving the highest number of votes in said 1930 election.

"That on or about the 15th day of August, 1932, a petition, was filed with the Secretary of the State of the state of Oklahoma, signed by approximately 7,000 legal voters of the state of Oklahoma, petitioning the Secretary of State to recognize the Socialist party as a political party in the state of Oklahoma; that said petition was approved by the Secretary of State on August 24, 1932, and the Secretary of the State Election Board was notified of said approval on said date; that Exhibit 'A' attached to defendants' answer is a true copy of the form of the petition above referred to.

"That on September 20, 1932, twelve persons, to wit: W. R. Stidham, A. G. Dather, M. Shadid, Wm. Lincoln Garver, Thomas Lee Wilson, A. M. McClure, Allen C. Adams, R. O. Womack, L. W. Langwell, Alfred Reynolds, Mrs. F. M. Denney, and M. E. Craig, submitted their applications to the Secretary of the State Election Board to have their names printed on the official state ballots to be voted at the regular general election to be held on Tuesday, November 8, 1932, as candidates of the Socialist party for the eleven offices of presidential electors; that said applications were all on similar forms and the application of Alfred Reynolds is typical of the other applications and the copy of said application of Alfred Reynolds atached to defendants' answer as exhibit 'B' is a true copy of said application. * * *"

It is the contention of the petitioners that the political organization coming into existence after the holding of the primary election has the right to have the names of its nominees for presidential and vice presidential electors placed on the ballots to be voted on in the November general election; that all political power is inherent in the people, and no power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage of those entitled to such right; that legislative interference with freedom of voters to form political organizations, and act under their respective party names, is an interference with the right to vote; that it was not the intent of the writers of the Constitution to deny the people of the state the right to express their will at the polls; and that the right of the people to express their will through their right of suffrage must never be abridged or infringed upon.

It is further contended by the petitioners that the Legislature of this state has gone further in abridging and restricting the right of suffrage in this state than the restrictions imposed upon the voters of any other state; that section 5649, of the 1931 Oklahoma Statutes is unconstitutional; that under section 5764, O. S. 1931, the names of the unopposed candidates do not appear on the primary ballots, and that the electors, plaintiffs herein, are unopposed, and their names would never have appeared on the primary ballot; that the primary election laws were not to prevent nominations, but to control and regulate such political parties as are in existence at the time of the primary election, and

that a party organized and recognized by the state as such political party is entitled to have the names of their nominees for presidential and vice presidential electors placed on the ballot to be voted for in the general election, even though such party did not participate in the primary election by reason of its not having been in existence at the time of the primary election, such party having been organized thereafter and prior to the general election.

It is the contention of the defendants that plaintiffs' petition does not state facts sufficient to constitute a cause of action; that plaintiffs are not entitled to the relief prayed for for the following reasons:

"(a) That plaintiffs have never filed their applications with the Secretary of the State Election Board as candidates for the several nominations of the Socialist party for the offices of presidential electors; (b) that the plaintiffs have never been voted upon as candidates for such nominations by the members of the Socialist party at a direct primary election held under authority of the laws of the state of Oklahoma; (e) that certificates of nomination have not been issued to the plaintiffs by the State Election Board; and (d) that there is no law authorizing the State Election Board to place upon the ballots for a general election the names of the persons claiming to be the candidates of a political party organized after the time for filing as candidates for party nomination had closed."

Section 1, art. 2, Constitution of the United States, provides, in part, as follows:

"* * *Each state shall appoint, in such manner as the Legislature thereof may direct. a number of electors, equal to the whole number of Senators and Representatives to which the state may be entitled in the Congress. * * *"

Section 6093, C. O. S. 1921, as amended by section 1, chap. 241, Oklahoma Sess. Laws 1929 [O. S. 1931, sec. 5754], provides as follows:

"Political parties in this state shall select or nominate their respective candidates for the various national, state, district, county and township offices by a primary election or elections as herein provided for; and no candidate's name shall be printed upon the official ballot for any general or special election at which all or any of the national, state, district, county and township officers are to be elected unless such candidate shall have been nominated as herein specified; provided, that this provision shall not exclude the right of nonpartisan candidates to have their names printed upon such official ballots as hereinafter provided for.".

This section provides that no candidate's name shall be printed on the official ballot for any general or special election at which all or any of the national, state, district, county, and township officers are to be elected unless such candidate shall have been nominated as therein specified, and specifically provides that this provision shall not exclude the right of nonpartisan candidates to have their names printed upon such official ballots as thereinafter provided for, as directed by the Constitution, section 5, art. 3. Chapter 29, art. 1, Sess. Laws 1931 [O. S. 1931, sec. 5755]. Section 1 provides as follows:

"Section 1. That section 6101, Compiled Oklahoma Statutes 1921, be and the same is hereby amended to read as follows:

"'Section 6101. Any person desiring to become a candidate before primary elections for a political party nomination shall petition the proper officials, as hereinafter provided, to have his name so printed upon such political party ticket, and this provision shall apply to nonpartisan candidates. Such petition shall be filed as hereinafter provided and shall be signed by the candidate personally before a notary public and sworn to according to law. Such petition shall give his place of residence, his post-office address, and shall name the party before which he desires to become a candidate and the date of the election. All nominating petitions for presidential electors, United States Senators, Representatives in Congress, state officers, members of the Senate and House of Representatives, district judges, and for all other offices for which the electors of the entire state, or subdivision thereof greater than a county are entitled to vote, shall be filed with the Secretary of the State Election Board.

"All nominating petitions for county and township officers or offices for which the electors of a subdivision of a county are entitled to vote, shall be filed with the secretary of the county election board."

Section 2 of article 1, of said chapter 29, requires the nominating petitions to be filed with the Secretary of the State Election Board not more than 100 days nor less than 65 days before the date fixed by law for the primary election. Section 6094, C O. S. 1921, as amended by section 3, art. 3, chap. 29, Sess. Laws 1931 [O. S. 1931, sec. 5758], provides:

"* * *The first Tuesday in the month of July of each even numbered year shall be biennial regular primary election day, at which time each political party **entitled** and **intending** to make nominations for the next

general election shall nominate their candidates for all elective offices and positions enumerated in the preceding section to be filled at such general election, including United States Senators and Congressmen."

Said section also provides:

"* * * That for the nomination for presidential electors, the entire state shall be considered a nominating district. A candidate filing for such an office shall designate in his nominating petition the number of the office for which he desires to be a candidate and the primary election ballot shall so show. Nominees of each of such numbered offices, except nominees for presidential electors, shall be designated on the general election ballot as the nominee of their party for the same number of the office for which he was nominated, and the nominee securing at said election the highest number of votes cast for said numbered office shall be elected to such office. Provided, that nominees for presidential electors shall be placed on the ballot in the general election as provided by section 2, chapter 100, Session Laws of 1927, and by Senate Bill No. 53, as passed by the Thirteenth Legislature, 1931."

The aforesaid section 6094, as amended by Session Laws 1931, provides for the time and purpose of the primary, and specifically states:

"At which time each political party entitled and intending to make nominations for the next general election shall nominate their candidates for all elective offices and positions enumerated in the preceding section to be filled at such general election including United States Senators."

Section 6270, C. O. S. 1921 (section 5814, C. S. 1931), provides:

"On the first Tuesday after the first Monday in November in each year next preceding the expiration of the term of office of each President of. the United States, a number of electors of the President and Vice President of the United States, equal to the whole number of Senators and Representatives in Congress to which the state is entitled, at the time the President and Vice President to be chosen shall come into office, shall be chosen by the qualified electors of the state in the same manner as is provided by the general election laws for the election of state officers. * * *"

Section 6110, C. O. S. 1921 (section 5777, Okla. Stat. 1931), provides:

"No person shall be allowed to become a candidate in any general election unless he shall have complied fully and completely with the provisions of this chapter."

It appears from the foregoing provisions of the various acts of the Legislature en-

acted, that the name of no candidate of a political party for any office shall be printed upon the ballots unless in conformity to the primary laws which have been enacted. Such is the plain provisions of the statutes, section 5777, Okla. Stat. 1931, supra.

In the case at bar, the plaintiffs did not file their names as provided by law as nominees for presidential and vice presidential electors. The political party does not file the name of any candidate under our primary system. Any person desiring to become a candidate before a primary election must petition the proper officials in the manner provided by law to have his named printed upon such political party ticket. This must be filed within a certain time, signed by the candidate personally, and sworn to before a notary public, according to law. It has become a part of the public policy in this state that every nomination shall be by primary election. Ex parte Wilson, 7 Okla. Cr. 610, 125 P. 739.

In the case of Dancy v. Peebly, 132 Okla. 84, 270 P. 311, this court, in speaking of section 5, art. 3, of the Constitution, said:

"By virtue of section 5, art. 3, of the Constitution of this state, the electors of political parties are entitled to cast their votes in a direct manner for their choice between opposing candidates for the nomination of a particular elective office, and the Legislature is without power to substitute or delegate the right of such choice to any person, body or convention. * * *

"It is a part of the political history of Oklahoma that a very large majority of the membership to the Constitutional Convention were elected on promise to assist in writing into the Constitution of the state a provision whereby the electors of the respective political parties would be given the right and privilege of balloting on candidates who offer themselves for the nomination by political parties to the various political offices."

Counsel for the plaintiffs cite the case of State ex rel. Mills v. Stewart, Sec. of State, 210 P. 465, from the State of Montana, and Morrissey v Wait (Neb.) 138 N. W. 186.

Our court, in the case of Dove v. Oglesby, 114 Okla. 144, 244 P. 798, in passing on the validity of the primary act, said:

"We have our own peculiar suffrage system, written into our basic law with great care and in plain English, therefore, the decisions of other jurisdictions based upon dissimilar systems render us little, if any, benefit in determining the plain meaning

of our own laws, or in deciding when our constitutional rights are violated."

In the third paragraph of the syllabus, the court said:

"Under our scheme or plan for holding elections and exercising the right of suffrage as provided in article 3 of the Constitution, primary elections are made a component element of the right of suffrage. They are made a necessary prerequisite to a general or final election, and the free exercise of the right of suffrage is just as necessary in primary elections as in general elections, and hence, the provisions in section 7, art. 3, of the Constitution apply in primary elections the same as in general elections."

In contrast to this we find J. Holloway, who concurred in the opinion in the case of Mills v. Stewart, supra, in speaking for the Supreme Court of Montana in the case of State ex rel. Smith v. Duncan (Mont.) 177 P. 248, said:

"Many of the provisions of the primary election laws are crudely drawn, and some of them are almost unintelligible."

It was specifically stated in the thirteenth paragraph of the syllabus in the case of State ex rel. Mills v. Stewart, supra, as follows:

"The general primary law did not entirely repeal the old law governing nominations, there being no repealing clause."

In the body of the opinion, the court said:

"The party was organized after the primaries, and, as previously stated, there can be no question as to the right to reorganize an old or to organize a new political party. It is a right inherent in the electors of the state, and such a right is a necessary accompaniment of popular government, without which our government would be bereft of efficient vital force and in danger of the evils of absolutism. When its organization was complete on September 30, 1922, then if it desired to nominate candidates for state office, it could not make such nomination at a primary nominating election under the initiative measure. The only primary election for which that act provided had already been held in August. That law was not to prevent nominations, but to subject them to public regulation and control so far as possible. State ex rel. Reibold v. Duncan, 55 Mont. 380, 177 P. 250. So that the Socialist party was obliged to look to the general law for authority. The Initiative Act (Laws 1913, p. 570) did not entirely repeal the old law. The old law in many respects was left in full force and effect. In fact, the initiative measure did not, in express language, contain any repealing clause at all. It only

provided that every political party shall nominate all its candidates for public office under the provisions of that law, and not in any other manner. Section 639, Rev. Codes 1921. But, as has been indicated, that inhibition referred only to the political parties in existence at the time of the primary. The court has held in the case of State ex rel. Reibold v. Duncan, supra, that the initiative law has no application to special elections, and that it was not designed to furnish the exclusive means by which all candidates for public office shall be nominated. The only law, then, under which nominations could be made by the new Socialist party thus organized on September 30, 1922, was section 612, Revised Codes 1921, which was in existence prior to the Initiative Act, and which, as we have seen, as not repealed thereby so far as relates to special elections and to political parties coming into existence after the primary election."

In the case if Morrissey v. Wait, supra, the Legislature had provided for the organization of new parties to nominate their candidates by convention. There is no such provision in our Constitution or statutory enactments.

The third and fourth paragraphs of the syllabus in the case of Morrissey v. Wait, supra, are as follows:

"3. Where a new party is formed after the time fixed by the statutes for the holding of the regular primary elections, nominations for candidates of such party may be made by mass convention held under the provisions of section 45, c. 52, Laws 1907; and certificates of nomination of such candidates may be filed with the proper officers at the time specified in section 40 of the same act.

"4. In construing statutes to the exercise of the elective franchise and to the nomination of candidates by political parties, either at primaries or by conventions or committees. the court should construe doubtful or ambiguous statutes in the light of the constitutional provision that 'all elections shall be free; and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise.' (Const. art. 1, sec. 22.)"

In the body of the opinion, it is said:

"The provision for the organization of new parties is contained in section 45, c. 52, Laws 1907 ('Ann. St. 1911, sec. 5905; Comp. St. 1911. c. 26, sec. 118s) which is a part of the law relating to primary elections. The section is lengthy. and will not be copied here in full. It contains the requirement hereinbefore referred to that there shall be 500 electors present at a mass state convention and the same number of signers to an agreement to form a new party. It also

contains the foregoing quotation that 'such new party shall be entitled to have separate party ballot at the next primary,' etc. This section, when considered with the requirement of the statute that all nominations be made by primary elections, might justify the thought that mass conventions can only form a new political organization, and that its candidates must be named at the next primary; but a view of other sections of the statute leads to a different conclusion. Section 39 of the same act provides; 'All nominations for candidates of any political party for office to be filled at a special election or any other office to be filled by the electors, except from the provisions of this act, shall be nominated by a convention or committee of their political party,' etc. : and provides further: 'It is the intention that the manner provided in this section for the nomination of officers named herein, by a convention or committee, shall apply only where such officers are to be chosen at a special election.' etc. Section 40, in substance, provides that when nominations are made by a convention or committee, as provided for in section 39, the certificates of nomination to be filed with the Secretary of State shall be filed not less than 25 days before the election; but it provides further: 'Certificates of nomination for a new party may be filed with the Secretary of State or the county or municipal clerk 25 or 20 or 15 days before the election, as the case may require.'

"Construing the several sections of the statute together, it seems clear that the 'certificate of nomination for a new party' mentioned in section 40 applies to the necessary certificate when a nomination is made by convention, and cannot possibly apply to a nomination made by a primary election, as shown by the returns thereof, in which latter case no nomination certificate is required. The limit within which such nominating certificate may be filed with the Secretary of State is much later in point of time than that fixed for canvassing the returns and for the certification to the Secretary of State of the results of a primary election. It seems clear, therefore, that a new party may be formed after the time when it is possible for it to participate in the regular primary election."

We do not think these cases are applicable to the instant case.

It is the province of the Legislature to enact laws relative to the right to vote and the regulation of political parties. Such laws should be reasonable and not destructive to some constitutional right. It is for the Legislature to provide the manner by which candidates may have their names placed upon the ballot for any primary, special, or general election, and so long as there is no interference with any constitutional inhibition, this court has no right to interfere.

It is true that our Constitution and statutes do not inhibit the formation of a new party subsequent to the primary election, but it is obvious that the plain intent and purpose of the legislative enactments in reference to the primary law require that before any candidate can submit himself to the qualified electors of the state, he must comply with the provisions of the statutory enactments relative to the primary law. See section 6110, C. O. S. 1921, supra. The relief which plaintiffs seek in this case is legislative and not judicial.

Much more might be said upon the issues herein involved, but, suffice it to say, that after a careful examination of the pleadings and the contentions presented by counsel in their briefs, we conclude that the primary law is a part of the public policy of this state, and that its provisions are mandatory and controlling upon all political parties of the state and nonpartisan candidates.

The writ is denied.

CLARK, V. C. J., and HEFNER, ANDREWS, and KORNEGAY, JJ., concur; LESTER, C. J., and RILEY, CULLISON, and SWINDALL, JJ., dissent.

---

ANDREWS, J. (specially concurring). While I have concurred in the opinion adopted by this court, I deem it advisable to discuss certain features of the case not discussed in that opinion and to express my views.

This action was commenced by the filing in this court of a petition, the caption to which is as follows:

"In the Supreme Court of the State of Oklahoma.

"M. E. Craig, W. R. Stidham, A. G. Dather, M. Shadid, Wm. Lincoln Garver, Thos. Lee Wilson, A. M. McClure, Allen C. Adams, R. O. Womack, L. W. Langwell, Alfred Reynolds, and M. Shadid, State Chairman, and Siegfried Ameringer, Secretary of the Socialist Party of the State of Oklahoma, Plaintiffs, v. Reford Bond, Chairman, John W. Hayson, Vice Chairman, and J. William Cordell, Secretary of the State Election Board, of the State of Oklahoma, Defendants, No. 24126."

The body of the petition is as follows:

"Petition.

"Comes now the plaintiffs M. E. Craig, W. R. Stidham, A. G. Dather, M. Shadid, Wm. Lincoln Garver, Thos. Lee Wilson, A. M. McClure, Allen C. Adams, R. O. Wo-

mack, L. W. Langwell, Alfred Reynolds, and M. Shadid, State Chairman, and Siegfried Ameringer, State Secretary of the Socialist party of the state of Oklahoma, and for their cause of action, and for ground of complaint against the defendants Reford Bond, Chairman, John W. Hayson, Vice Chairman, and J. William Cordell, Secretary of the State Election Board of the state of Oklahoma, allege and state:

"(1) The plaintiffs M. E. Craig, W. R. Stidham, A. G. Dather, M. Shadid, Wm. Lincoln Garver, Thos. Lee Wilson, A. M. McClure, Allen C. Adams, R. O. Womack, L. W. Langwell, Alfred Reynolds, are each and all residents and voters of the state of Oklahoma, and the other plaintiffs, M. Shadid and Siegfried Ameringer, are likewise legally qualified and actual voters of the state of Oklahoma, and the plaintiff M. Shadid is the legally selected and acting chairman of the Socialist party of the state of Oklahoma, and the plaintiff Siegfried Ameringer is the legally selected and acting secretary of the Socialist party of the state of Oklahoma.

"(2) Plaintiffs further state that the defendant J. William Cordell is the Secretary of the State Election Board of the state of Oklahoma; the defendant Reford Bond is the Chairman of the State Election Board of the state of Oklahoma, and the defendant John W. Hayson is vice chairman of the State Election Board of the state of Oklahoma; that the said three election officials herein last named, constitute and compose, and are the legally selected, qualified and acting members of the State Election Board of the state of Oklahoma.

"(3) The plaintiffs further allege that the Socialist party is a duly constituted and authorized political party under the laws of the state of Oklahoma; and plaintiffs herein further allege that the said political party organization has been and was effected on or about the 7th day of July, 1932, and not prior to said date, and that the said organization of the Socialist party of the state of Oklahoma was not recognized by the state of Oklahoma and its duly constituted and elected officials, that is, the Secretary of the State and the State Election Board, until the 24 day of August, 1932, and thereafter.

"(4) The plaintiffs further state that, on or about the 15th day of August, 1932, a petition was filed with the Secretary of the State of the state of Oklahoma; that the said petition was signed by approximately 7,000 legal voters of the state of Oklahoma; that by the said petition, and the terms thereof, the proper officials of the state of Oklahoma were petitioned and requested to recognize the petitioners as being and constituting the Socialist party of the state of Oklahoma; that the said petition was accepted, approved by the Secretary of the State, and transmitted to the Secretary of the State Election Board.

"(5) The plaintiffs herein further allege that when or after the said petition thus filed with the Secretary of the State and certified by him, had been transmitted to the Secretary of the State Election Board of the state of Oklahoma, it became and was the duty of the said Election Board to recognize the said petitioners to be, and to constitute the Socialist party of the state of Oklahoma; and the law having imposed this obligation on the State Election Board, it thereafter became the duty of the said Election Board to place the names of the designated plaintiffs as the presidential and vice presidential electors of the Socialist party of the state of Oklahoma upon the official ballot to be voted for in the November election of the year 1932.

"(6) Plaintiffs further state that the said Secretary of the State Election Board of the state of Oklahoma; and the Chairman, and the Vice Chairman of the said State Election Board, acting in conjunction with the said Secretary, have declared that they will not place the names of these designated plaintiffs herein, upon the ballot as in the November election of 1932, as the nominees of the Socialist party of the state of Oklahoma; and these plaintiffs further allege that the said State Election Board in its assuming the attitude that it has assumed toward these plaintiffs and their petition to be placed upon said ballot, is withholding and denying to the plaintiffs their legal right as said chosen electors of the said Socialist party of the state of Oklahoma."

The prayer of the petition is as follows:

"Wherefore, the plaintiffs herein pray that all their names, except the name of Siegfried Ameringer, be placed upon the official ballot, to be voted for in the election to be held in November of the year 1932; that said plaintiffs herein designated have their names printed on the said ballot as presidential and vice presidential electors of the Socialist party of the state of Oklahoma, and for this purpose, the plaintiffs herein pray that the honorable court issue its alternative writ of mandamus directed to the said Election Board of the state of Oklahoma, composed of J. William Cordell, as Secretary, Reford Bond, as Chairman, and John W. Hayson, as Vice Chairman of the State Election Board of the state of Oklahoma; commanding them, as said Board, to do and perform the acts herein prayed for, or show legal cause why they should refuse to perform said act, as the plaintiffs herein have prayed, and for such further and additional relief as may be just and proper in the premises."

The petition was verified.

The defendants waived the issuance of

an alternative writ of mandamus and filed an answer, in which they first questioned the sufficiency of the petition of the plaintiffs by alleging that that petition did not state facts sufficient to constitute a cause of action. Because of that allegation I have deemed it necessary to set out the petition in full.

It will be noted that the plaintiffs, in their petition, prayed "* * * that all their names, except the name of Siegfried Ameringer, be placed upon the official ballot, to be voted for in the election to be held in November of the year 1932. * * *" There are 13 plaintiffs in this action. To place "all their names, except the name of Siegfried Ameringer," upon the official ballot would be to place 12 names thereon. The number of presidential electors to be elected in the state in Novmber, 1932, is 11, and the names of only 11 nominees for the office may be placed upon the official ballot.

I pass to what I consider to be a fatal defect in the petition. Nowhere in it was it alleged that any of the plaintiffs was the nominee or the candidate of any political party for presidential elector. While it was alleged therein that certain of the plaintiffs were residents and voters of the state, and that, when or after the petition for recognition of the Socialist party in the state was filed with the Secretary of State and certified by him to the Secretary of the State Election Board, it became and was the duty of said election board to place the names of the plaintiffs upon the official ballot to be voted for in the November election of the year 1932 as presidential and vice presidential electors of the Socialist party, it was nowhere alleged in the petition that any of the plaintiffs had been nominated or selected in any manner by the Socialist party in the state of Oklahoma as its candidate for office.

Another fatal defect in the petition is that it was nowhere alleged therein that the plaintiffs who asked to have their names printed upon the ballot as nominees of the Socialist party for presidential electors are affiliated with the Socialist party or registered as such.

However, I do not desire to base my decision on the evident defects in the petition. In my opinion, the issues are of considerable public importance and should be determined upon their merits notwithstanding the failure of the plaintiffs properly to present them by the pleadings.

This is an action in mandamus. This court is asked to require the State Election Board of the state of Oklahoma to do certain things. Since the early history of this state, the rule has been that mandamus will lie to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. Eberle v. King, Judge, 20 Okla. 49, 93 P. 748. Since we are asked to require the State Election Board to perform an act, we must ascertain whether or not the law specifically enjoins the performance of that act upon members of the State Election Board.

The conclusion of the plaintiffs in their petition is that it is the duty of the State Election Board to place the names of certain of the plaintiffs upon the official ballot to be voted for in the November election of the year 1932 as presidential and vice presidential electors of the Socialist party of the state of Oklahoma, but there was no allegation of fact in the petition from which that conclusion may be drawn. From the facts disclosed by the agreed statement of facts, it appears that 12 applications were filed with the State Election Board, and the application of Alfred Reynolds was set out in the agreed statement of facts as typical of the others. That application was as follows:

"Application to place name on State Ballot

"Date Sep. 14 1932

"J. Wm. Cordell, Secretary,

"State Election Board,
"Oklahoma City.

"Dear Sir:

"I hereby make formal application to have my name printed on the official state ballot, to be voted at the regular election, to be held on Tuesday, November 8th, as a candidate of the

"Socialist Party For the nomination
"(Political Party)

"For the office of
"(Presidential Elector No.
"(Name of Office)

"I have been a qualified elector of the state of Oklahoma for more than sixteen years.

"I am affiliated by registration with the Socialist party.

"My age is 64 years.

"My residence is Covington, Okla.

"My occupation is Oil worker.

"You are also notified that I have appointed and authorized _____ of _____ and _____ of _____ to expend money in defraying the expenses of my campaign.

(If no one has been appointed or authorized leave blank.)

"I have not and will not authorize any person to expend money or other things of value in the interest of my candidacy, but I will, in person, account for all the money or other things of value expended in the interest of my candidacy, as required by law.

"Alfred Reynolds
"(Signed here with ink)

"Alfred Reynolds
"(Typewrite your name here)

"Subscribed and sworn to before me, a notary public this the 14th day of Sept. 1932.

"W. L. Coberly Notary Public
"My commission expires May 28, 1933
(seal)

"(This application must be signed by the candidate, in person, before a notary public.)"

It will be noted that that application was to have the name of Alfred Reynolds printed upon the official state ballot at the regular election to be held on Tuesday, November 8, 1932, as a candidate of the Socialist party for the nomination of the office of presidential elector, and not as a nominee of the Socialist party. The applicant nowhere stated that he was the nominee of the Socialist party or that he had been nominated by the Socialist party. It is apparent that the applicant used a blank form of application to have his name printed on the state ballot as a candidate for the nomination of the office of presidential elector and filled it out to show the date of the election as November 8th. It was not shown that any of the plaintiffs ever filed with the State Election Board an application to have his name printed upon the official state ballot as a candidate of the Socialist party for election to the office of presidential elector.

Since none of the applicants asked the State Election Board to place his name upon the official state ballot as a candidate of the Socialist party for election to the office of presidential elector, I am of the opinion that none of them is justified in asking this court to require the State Election Board, by mandamus, to do so. They are not entitled to have a writ requiring the State Election Board to do a thing which they have not requested the State Election Board to do.

Though the applications filed with the State Election Board had been to have the names of the applicants placed upon the ballot at the general election as the candi-dates of the Socialist party for presidential elector, I know of no provision of law in this state authorizing such an application to be made. There is no provision of law in this state authorizing the petitioning of the State Election Board to have the names of political nominees or independent candidates placed upon the ballot at a general election. The names to be placed upon the ballot at a general election are ascertained by the election boards from the returns of the primary election, from the petitions filed with those election boards by persons who desire to have their names printed upon the political party ticket at the primary, and from the petitions filed by nonpartisan candidates. From the information so received the election boards prepare the ballots. None of the plaintiffs in this case filed such a petition, either as a member of a political party, or as a nonpartisan, and none of them were voted on at any primary election.

But admitting for the purpose of discussion that the petition of the plaintiffs stated a cause of action and that proper applications had been made to the State Election Board, the relief prayed for must be denied for the reason that there is no law authorizing this court to grant the relief prayed for. The plaintiffs admit that there is no legislative enactment requiring the State Election Board to place their names upon the state ballot as the candidates of the Socialist party for presidential elector. They contend that a political party organized and coming into existence after the holding of a primary election has the right to have the names of its nominees for presidential and vice presidential electors placed upon the ballot to be voted on in the November election, notwithstanding the fact that there is no law enjoining that duty upon the State Election Board. In their brief they discussed the constitutional provisions with reference to political power and the exercise of the right of suffrage, but they failed to distinguish between a political power and the exercise of the right of suffrage and the legislative right to prescribe qualifications of candidates for public office. Nowhere do they cite any authority to the effect that the Legislature does not have the authority to prescribe the qualifications of candidates for public office, or the procedure to be followed by those candidates in having their names placed upon the ballot. The right to vote is one thing, and the right to be voted for is another. While every citizen may desire to become a candidate for public office and to be voted for for that position, he has no legal right to become a candidate for pub-

lic office without complying with the legislative requirements therefor, and if he fails to comply with those requirements, he has no legal right to have his name placed upon the ballot. To hold otherwise would be to hold that one citizen of the state has rights which another citizen of the state does not have. I know of no reason why a rule which is applicable to Republicans, Democrats, and Independents is not applicable to members of any other political party. Since no Republican, Democrat, or Independent is authorized to have his name placed upon the ballot at a general election by petitioning the State Election Board therefor, I know of no reason why a member of any other political party should be accorded that privilege. The plaintiffs in this action are individuals seeking individual privileges. Any one of them could have filed a timely petition with the State Election Board to have his name printed upon the Socialist party ticket at the primary election. None of them did so. The excuse that they offer for failing to do so is that the Socialist party was not in existence in the state of Oklahoma at the time fixed by law for the filing of such petitions. They offer no proof of that statement. The Socialist party has been in existence for many years. It is one of the powerful parties in the nation. It contains among its members electors of a high type of citizenship. It serves a useful purpose in carrying on our party system of government. This court cannot accept as a fact a statement that it did not come into existence until on or about July 7, 1932. I am of the opinion that it came into existence long prior to that date. Had one of the plaintiffs, as a member of that political party, filed a timely petition to have his name printed upon the Socialist primary ticket, and had that prayer been denied, he could have presented to this court a question of fact as to whether or not that party existed in Oklahoma and a question of law as to whether or not the Legislature could provide when a political party should cease to exist.

An attack is made upon the provisions of section 5649, O. S. 1931. The provisions of that section are not applicable herein for therein it is provided that that act shall not apply to candidates for presidential electors.

A political party has been defined by the Legislature as "an affiliation of electors representing any political organization which, at the next general election preceding, polled for President or Governor at least five per centum of the entire vote cast for either of said respective officers, or any such political organization which may have polled at least ten per centum of the vote of as many as three other states at the last election held in such states." Section 5648, O. S. 1931. By the provisions of that section, such political parties "shall nominate their candidates as all other political parties and be governed by laws regulating the same." It is nowhere shown in this record that the Socialist party did not poll at least ten per centum of the vote of as many as three states other than Oklahoma at the last election held in such states. This court cannot presume that a political party failed to poll that percentage of votes, and, in the absence of proof, this court cannot say that the Socialist party was not a political party within the legislative definition thereof and entitled to have candidates for presidential electors placed upon the primary ballot at the primary election in 1932.

I am of the opinion that by the language of section 5648, supra, the existence of a political party is not defeated by its failure to cast five per centum of the entire vote cast in this state and that its existence is dependent upon the vote in at least three of the states. So long as a political organization polls at least ten per centum of the vote of as many as three other states at the last election held in such states, in my opinion, it is a political party within the definition of a political party as prescribed by the Legislature of this state. It seems to me that that section, when taken as a whole, can be given no other logical construction.

It appears to me that the difficulty in which the plaintiffs find themselves is not due to any defect in the law of the state of Oklahoma; that it is not due to the non-existence of the Socialist party at the time fixed for filing, and that it is due to the fact that no one affiliated with the Socialist party saw fit to file a petition with the State Election Board to become a candidate for nomination as presidential elector of the Socialist party within the time prescribed by the Legislature therefor. Since none of the plaintiffs saw fit to petition the State Election Board to have his name placed upon the ballot at the primary election as a candidate of the Socialist party for presidential elector, none of them is in a position to say that such a petition would have been denied. If, as contended, the legislation adopted by the Legislature of Oklahoma is inoperative, these plaintiffs must still lose, for their remedy was to bring a mandamus action to require the State Election Board to place their names upon the primary ballot. This they did not do. If this court was considering the petition of these plaintiffs to require the State Elec-

tion Board to place their names upon a primary ballot as candidates for nomination, an entirely different legal proposition would be presented.

Under the provisions of section 1, art. 2, of the Constitution of the United States, every state is required to appoint, "* * * in such manner as the Legislature thereof may direct, a number of electors, equal to the whole number of Senators and Representatives to which the state may be entitled in the Congress, * * *" the time of chosing thereof and the day on which they shall give their vote to be determined by Congress. Under the provision, the manner of appointment of presidential electors is left to the Legislatures of the various states.

The Legislature has provided the manner of appointment of presidential electors. It has provided that they "* * * shall be chosen by the qualified electors of this state in the same manner as is provided by the general election laws for the election of state officers." Section 5814, O. S. 1931 (section 6272, C. O. S. 1921). That has been the rule since the adoption of chapter 31, art. 3, of the Session Laws of 1907-08.

It has provided that political parties shall nominate their respective candidates by primary election, as provided by the Legislature, and that nonpartisans may have their names printed on the official ballots, as provided by the Legislature, and that no candidate's name shall be printed upon the official ballot for any general election at which all or any of the national officers shall be elected unless such candidate shall have been nominated as specified by the Legislature. Section 5754, O. S. 1931 (chapter 241, section 1, Session Laws 1929). It will be noted that that act was an amendment of section 6093, C. O. S. 1921, which did not include national officers. An evident purpose of the amendment was to include national officers within the provisions of the act.

Section 6093, supra, was originally adopted as section 1, art. 4, chap. 16, Session Laws 1909. The language thereof was as follows:

"Section 1. Political parties in this state shall select or nominate their respective candidates for the various state, district, county, township and precinct offices by a primary election as herein provided for and no candidate's name shall be printed upon the official ballot for any general or special election at which all or any of the state, district, county, township or precinct officers are to be elected unless such candidate shall have been nominated as herein specified; provided, that this provision shall not exclude the right of nonpartisan candidates to have their names printed upon such official ballots as hereinafter provided for."

The words, "as herein specified," therein, referred to other provisions of the article and evidently referred to primary elections, for no provision for the nomination of candidates of political parties was made other than by primary elections. Section 5 of the article provided that:

"Any person desiring to become a candidate before primary elections for a political party nomination shall petition the proper officials, as hereinafter provided, to have his name so printed upon such political party ticket and this provision shall apply to nonpartisan candidates * * *"

—and that:

"All nominating petitions for presidential electors, United States Senators, Representatives in Congress, state officers, members of the Senate and House of Representatives, district judges, and for all other officers for which the electors of the entire state or subdivision thereof greater than a county, are entitled to vote shall be filed with the Secretary of the State Election Board. * * *"

Thereby those persons desiring to become candidates for presidential electors were required to petition the State Election Board to have their names printed upon the party ticket of the political party of which they sought to be nominated as presidential electors. Section 5, supra, has been carried forward as section 5755, O. S. 1931, after amendment by chapter 29, art., 1, sec. 1, Session Laws 1931, as to the form of the petition. The clear language, including "presidential electors," settles any question as to whether or not candidates for presidential electors are included therein.

Under the provisions of section 5754, supra, no candidate's name shall be printed upon the official ballot for any general or special election "unless such candidate shall have been nominated as herein specified." By the provisions of section 25, art. 2, chap. 31, S. L. 1907-08, "No person shall be allowed to become a candidate in any general election unless he shall have complied, fully and completely, with the provisions of this article." That section was carried forward as section 3041, R. L. 1910, the word "article" being changed by the revisers to "chapter," and it now appears as section 5777, O. S. 1931 (section 6110, C. O. S. 1921). Section 3032, R. L. 1910, is the provision of the 1907-08 act.

So we have a positive legislative provision that no person shall be allowed to become a candidate in any general election unless he shall have been nominated under

a primary system, after having filed with the proper officials his petition to have his name printed upon the party ticket of the political party of which he seeks to be a candidate, or unless he has petitioned to become a nonpartisan candidate. The Legislature has provided no other method by which any person may become a candidate in any general election.

It is said that, since no method has been provided by the Legislature by which the plaintiffs herein may have their names printed on the ballot, this court should brush aside all technicalities and require the State Election Board, by mandamus, to print the names of these plaintiffs upon the ballot. To do so would be to violate the provisions of the Constitution of the United States, supra, vesting the Legislature with the power to determine the manner in which presidential electors may be appointed. That power is legislative in its nature and it is legislative by reason of the constitutional provision, supra. This court is not authorized to legislate. If no provision has been made by the Legislature for the printing of the names of candidates of political parties upon the ballot in a general election, where the political party was organized after the date of the primary election, the fault, if any, is not with this court, but with the Legislature in the exercise of its discretion.

I am not convinced that there is a fault in such legislation under our system of election procedure, for otherwise a man might be permitted to participate in the nomination of candidates for office of two political parties. He might participate, with his fellow electors, in the primary election, and then if dissatisfied with the result of that primary election, he might participate with others in the selection of the candidates of a new political party. If the election laws of this state are not applicable to all political parties, without regard to the date of the organization thereof, candidates for office of a political party organized after the date fixed by law for the holding of primary elections can become candidates for such office without being subjected to any of the penal provisions with reference to the filing of statements of campaign disbursements, etc. Under the provisions of section 5781, O. S. 1931, a candidate before the primary must file a carefully itemized statement of his campaign expenditures, and upon his failure to file the same, the state or county election board may withhold the certificate of nomination and refuse to issue the same until such report is filed. Section 5782, O. S. 1931. Can it be said that a candidate of a new political party

is to have greater rights than a candidate of an old political party? Can it be said that a candidate of an old political party is required to keep his campaign expenditures within the defined limits and make sworn statements thereof and receive his certificate of nomination only after compliance with those statutes, while a candidate of a new political party may receive his certificate of nomination from the officers of the political party rather than the officers provided by law for the issuance of certificates of nomination, without regard to the amount of his campaign expenditures?

If the election laws of this state are not applicable to all political parties without regard to the date of the organization thereof, an unsuccessful candidate at a primary election may become the candidate of a new political party and thereby have a right not afforded to other electors, for, under our law, no other elector may be a candidate for nomination of two political parties. To grant the prayer of the plaintiffs herein would be to hold that these plaintiffs have greater rights than the candidates of political parties regularly nominated at a primary election and independent candidates. I do not think that this court should so hold.

In Persons v. Penn, 33 Okla. 581, 127 P. 384, this court had before it an appeal from an order denying the application for a peremptory writ of mandamus to compel the members of the State Election Board to print the plaintiff's name upon the ballot of the general election as the nominee of the Progressive party for Representative in Congress. It was disclosed that the plaintiff filed a timely petition with the Secretary of the State Election Board to have his name placed upon the Progressive party ticket as a candidate for nomination of that party for the office of Representative in Congress, No other person filed a petition therefor. The State Election Board failed to provide any ballots for the Progressive party at the primary election. The plaintiff was not nominated or voted for by the voters at the primary election. Upon the refusal of the State Election Board to print his name as a candidate for election to the office of Representative in Congress upon the ballots for the general election, the plaintiff brought an action in mandamus. This court, in an opinion by Mr. Justice Hayes, held that, inasmuch as the Progressive party had not at any primary election nominated the plaintiff as its candidate for Representative in Congress to be voted for at the ensuing general election, the plaintiff was not entitled to the writ sought. In view of that holding and the positive stat-

utes hereinbefore cited, the decisions of the Supreme Court of Nebraska and Montana relied upon by the plaintiffs are not persuasive.

The petition for the writ should be denied.

RILEY, J. (dissenting). Petitioners as members and officers of the Socialist party of the state of Oklahoma seek, in this original action, a writ of mandamus to compel the respondents who constitute the State Election Board to place their names upon the state ballot for the November, 1932, general election, as candidates of the Socialist party for presidential and vice presidential electors.

The parties agree that petitioners are legal voters of the state of Oklahoma; that the Socialist party was not a participant in the last primary election held within this state as the said party within this state did not then exist; that its reorganization was effected on or about July 7, 1932, and on August 15, 1932, a petition for recognition as a political party was filed with the Secretary of State, containing approximately 7,000 signatures of legal voters. The Secretary of State approved the petition on August 24, 1932.

On September 20, 1932, petitioners submitted their application to the Secretary of the State Election Board to have their names printed on the official state ballot for the general election to be held Tuesday, November 8, 1932, as candidates of the Socialist party for presidential electors.

On September 24th, the State Election Board denied the said application and assigned as reason that the applications were not filed in time and in the manner provided by law; that the petitioners had not been nominated by the voters of the Socialist party at a direct primary election held under the laws of the state of Oklahoma, and that there was no law authorizing the State Election Board to place the names of said persons as such candidates upon the ballots for said election.

It is true that the public policy of Oklahoma, as announced in the Constitution, section 5, art. 3, contemplates a mandatory primary system. Thereby the duty is cast upon the Legislature to make provision for the same, "which shall provide for the nomination of all candidates in all elections for state, district, county and municipal officers, for all political parties." An exception is provided so as "not to exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

However, it is impossible that the provisions made by the Legislature would apply to a party not in existence. State ex rel. Williams v. Stewart (Mont.) 198 P. 1118.

The law contemplates the birth, death, and resurrection of a political party, chapter 151, S. L. 1923-24 [O. S. 1931, sec. 5650]. In effecting the reorganization of the Socialist party, compliance has been made with the provisions of law. The state has for the second distinct time recognized the Socialist party. Can it be reasonable that a party exists, and yet because of regulatory statutes, which are intended to safeguard the ballot, it is without power to function so as to give expression to the will of freemen?

No civil power shall ever interfere to prevent the free exercise of the right of suffrage. "The election shall be free and equal." Section 7, art. 3, Const.

The laws enacted by the Legislature which regulate existing political parties is a civil power when applied, but by the highest of mandates they shall not be applied to prevent the exercise of the right of suffrage.

Let us suppose for the sake of argument that the existing political parties had heretofore advocated some issue agreeable to the citizenship, such as prohibition of the liquor traffic. Let us suppose that the existing parties in National Convention assembled, after the date of the state primary reversed their position upon such an issue. Let us suppose that above all other issues a great number of citizens of the state, a majority of the citizenship, desired prohibition. Would we, or should we, adhere to the regulatory provisions and neglect the written and underlying principles of our government which are intended to give expression to the will of the governed?

"* * * Governments are instituted among men, deriving their just powers from the consent of the governed." Declaration of Independence.

But how will the governed express their consent unless by and through organizations designed to express the united views of the citizenship?

When issues are presented, which, if sanctioned by a sufficient number of citizens, will constitute the public policy, is the united voice of freemen to be suppressed because of inapplicable regulatory provisions of statute?

Must a political party serve an apprenticeship after state recognition before its vote will be counted? To answer the question in the affirmative is to invite revolution.

(Dorr's Rebellion, Rhode Island, 4 Am. St. Trials Rep.—This revolt came about because of a restrictive franchise).

This question was before the Montana court in State v. Stewart, 210 P. 465. There it was held:

"The initiative primary law having reference to nomination by political parties only, it is manifest that it can only refer to such political parties as are then in existence at the time of the primary election. * * *

"The party was organized after the primaries, and, as previously stated, there can be no question as to the right to reorganize an old or to organize a new political party. It is a right inherent in the electors of the state, and such a right is a necessary accompaniment of popular government, without which our government would be bereft of efficient vital force and in danger of the evils of absolutism."

While it is true, section 1, ch. 241, S. L. 1929 [O. S. 1931, sec. 5754] provides that:

"No candidate's name shall be printed upon the official ballot for any general or special election * * * unless such candidate shall have been nominated as herein specified."

A liberal construction should impel us to hold that the inhibition runs only as against candidates of parties existing at the time of the primary and not to candidates selected for parties organized subsequent to such primary election.

The amendment and provisions of chapter 29, art. 3, S. L. 1931, should likewise be construed in reference to the requirement of nominating petitions.

In the case of Persons v. Penn, 33 Okla. 581, 127 P. 384, this court assumed the existence of the Progressive party at the time of the primary election. This was the basis of the denial of the relief there sought. That decision is not controlling.

The Nebraska Court construed their restrictive statute relating to primaries in the light of their constitutional provision similar to ours, supra, "all elections shall be free, and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise," so as to permit the newly organized Progressive party to have a place upon their ballot. That court held that such regulatory statutes must be reasonable, and must not "unnecessarily hamper or impede the right of the voter to vote for whomsoever he pleases at the general election." Morrissey v. Wait, Sec. of State, 92 Neb. 271.

In State ex rel. Gauntt v. Lasher, 116 Okla. 273, 244 P. 809, this court held:

"There is no provision of the election law preventing the electors, in the general election, from writing the name of the nominee of any party upon their ballots in the space provided therefor when such nominee's name is not printed therein, and when so done the same constitutes 'voting by ballot,' as required by section 6, of art. 3, of the Constitution in all elections by the people."

Since each individual elector may write on the ballot the names of the candidates he desires to vote for, when a sufficient number of citizens of a party that has once been recognized have petitioned for the re-establishment of such a party, and such party has, subsequent to the primary election, been recognized by the state, there appears no valid reason why such a political party should not have the names of its candidates printed upon the official ballot so as to eliminate the necessity of the writing upon the ballot the names of the candidates.

The writ should issue.

LESTER, C. J., and CULLISON and SWINDALL, JJ., concur.