** Summary **
PROCEDURES FOR POLITICAL PARTY TO REMAIN POLITICAL PARTY A political party in the State of Oklahoma to remain a political party, must receive ten percent of the votes cast for the party receiving the highest number of votes in two general elections following each other involving the election of the President of the United States and the Governor of the State of Oklahoma. Specifically, the American Party must have received ten percent of the votes cast in the 1970 general election for the Democratic nominee for the Office of Governor of the State of Oklahoma or to have received ten percent of the votes cast for the Republican nominee for President of the United States in the 1972 election. The Attorney General is in receipt of your request for an opinion wherein you ask the following question: "What method of computation should be used to determine whether the American Party received ten percentum of the vote cast for the party receiving the highest number of votes in the 1970 and 1972 general elections under 26 O.S. 111 [26-111] (1971)?" You also ask: "In the event it is determined that the American Party is no longer a party, what is the effect on the status of voters currently registered in said party, and what actions should be taken by the State Election Board and the county election boards as a result of this determination?" Title 26 O.S. 111 [26-111] (1971) provides as follows: "A political party is an affiliation of electors representing any political organization which, at the next general election preceding, polled for President or Governor at least five percentum of the entire vote cast for either of said respective officers, or any such political organization which may have polled at least ten percentum of the vote of as many as three other states at the last election held in such states. Such political parties shall nominate their candidates as all other political parties and be governed by laws regulating the same. And such political party shall in no way use or conflict with the name of other political parties in the state. When such political parties fail to receive at two general elections, following each other, ten percentum of the vote cast for the party receiving the highest number of votes, it ceases to be a party. At the primary election held in August, 1914, any party which has a national recognition as a party shall be recognized as a political party in Oklahoma." Of primary importance in arriving at a determination of the Legislature's intent, as evidenced by the above statutory enactment, is to consider such enactment together with any constitutional provision that has a bearing on the formation of a political parties. Since statutory enactments are simply implementing tools for the provisions of the Constitution, it is necessary to trace the historical background starting with the pertinent constitutional provisions. For example, Article III, Section 6 of the Oklahoma Constitution provides for a mandatory primary system and in doing so provides as follows: "The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for State, District, County, and municipal officers, for all political parties, including United States Senators, except for the office of Presidential Electors who shall be nominated by the regularly called conventions of the various political parties and the chairman and secretary of each political party convention shall certify the names of said nominees to the Secretary of the State Election Board; Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate." Other provisions pertinent to this question are Article III, Section 6 and Article III, Section 7 which provide as follows: " 6. In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot; and may, when necessary, provide by law for the registration of electors throughout the State or in any incorporated city or town thereof, and, when it is so provided, no person shall vote at any election unless he shall have registered according to law." " 7. The election shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage, and electors shall, in all cases, except for treason, felony, and breach of the peace, be privileged from arrest during their attendance on elections and while going to and from the same." Prevalent throughout the above cited constitutional provisions are the guidelines that must be followed by the Legislature in implementing the system of voting. For example, Section Article III, Section 5 requires a mandatory primary system for those offices enumerated for all political parties. This does not include the right to non-partisan candidacy, but for one to run as a member of a political party he must be nominated through the primary system. That there is a mandatory primary is clear and that direction is given to the Legislature to enact laws providing the mechanics for such primary system is also clear by the plain wording of the constitutional provision. What is important concerning this provision to the question here, is that this section authorizes the Legislature to prescribe the qualifications for those desiring to become a candidate of his political party for nomination in a primary election. Finley v. State Election Board of Oklahoma, Okl., 325 P.2d 1037 and Johnson v. State Election Board, Okl., 370 P.2d 551. Therefore, initially the plain wording of the constitutional provision, approved by the Oklahoma Supreme Court, provides that the Legislature has the duty and power to prescribe conditions necessary to implement the voting system. Article III, Section 6 above cited, likewise prescribes the qualifications for the registration of electors and is pertinent here in that the Constitution has delegated the power of the Legislature to provide the necessary implements to carry on the election process. Therefore since it is clear that the Legislature has the power to create and to implement, the next question that necessarily follows is whether the Legislature has the power to impose limitations on the election process, and specifically here, whether or not the Legislature can impose limitations on political parties. Article III, Section 7 of the Oklahoma Constitution, supra, is the section most often cited as authority for the proposition that the Legislature cannot interfere in the election process. Specifically a plain reading of that section does provide for free and equal elections and does provide for the free exercise of the right of suffrage. The right to vote for a party candidate of one's choice has been held by this Court to be closely related to the valuable right of suffrage guaranteed to all qualified electors under Article III, Section 7. American Party v. State Election Board, Okl., 442 P.2d 291. However, the Court has expressly recognized the power of the Legislature to control the election processes except where expressly limited by the Constitution. In construing Article III, Section 5 of the Oklahoma Constitution the Court recognized that the Oklahoma Legislature has plenary power in the area of the election processes subject to express limitations by the Constitution. Maddox, et al. v. Hunt, et al., 183 Okl. 465, 83 P.2d 556. Specifically, the Court has recognized that it is within the province of the Legislature to regulate political parties. In the case of Craig v. Bond, 160 Okl. 34, 15 P.2d 1014 the Court stated: "It is the province of the Legislature to enact laws relative to the right to vote and the regulation of political parties. Such laws should be reasonable and not destructive to some constitutional right. . . . "It is true that our Constitution and statutes do not inhibit the formation of a new party subsequent to the primary election, but it is obvious that the plain intent and purpose of the legislative enactments in reference to the primary law require that before any candidate can submit himself to the qualified electors of the state, he must comply with the provisions of the statutory enactments relative to the primary law. See Section 6110, C.O.S. 1921, supra." It may then be reasonably inferred that the Legislature has the power to set guidelines for the creation as well as the demise of a political party in the State of Oklahoma. This power is couched within constitutional limitations such as that appearing in Article III, Section 5, supra, which emphasizes that a candidate running for office to be a nominee of his party must follow the mandatory primary system as created by the Constitution and implemented by the Legislature. 26 O.S. 112a [26-112a] (1971). This provision as well as the above cited constitutional provisions were construed and approved by the Supreme Court of this State, initially in the case of Craig v. Bond, 160 Okl. 34, 15 P.2d 1014 and again affirmed in the case of Lillard v. Cordell, et al.,200 Okl. 577, 198 P.2d 417. Since the Legislature is cloaked with the power to establish limitations within which a political party may operate in Oklahoma close examination must be given to 26 O.S. 111 [26-111] (1971). It is a well-established canon of construction that the plain meaning of a statute must be followed if the language contained therein is unambiguous and capable of clear construction. Special Indemnity Fund v. Herold, Okl.,398 P.2d 827. However, it is also recognized that where a literal meaning of the wording of the statute would lead to absurd consequences which the Legislature probably did not contemplate the Courts must presume that such consequences were not intended and should adopt a construction that is reasonable and that will avoid such absurdity. Brown v. State Election Board, 197 Okl. 173,170 P.2d 200. Though 26 O.S. 111 [26-111] (1971) appears not to have been directly interpreted by the Supreme Court of Oklahoma there are cases speaking to the election law which are of guidance to us in our interpretation of that statute. For example, the case of Swindall v. State Election Board, 168 Okl. 97, 32 P.2d 691 was an original action in mandamus by the plaintiff to compel the State Election Board to recognize him as a candidate for the Republican nomination as Justice of the Supreme Court of Oklahoma subject to the action of Republican voters in a July primary. The question presented there is distinguishable from the question here in that plaintiff's action involved his eligibility in the face of his voting for a nominee of an opposing political party in the last statewide election in derogation of one of the requirements of a statute requiring a participant in a primary to pledge support to the nominees of his party. In this case the Court noted that when the language of a statute is ambiguous, it is proper to consider the conditions with reference to the subject matter that existed when that statute was adopted, including the mischief sought to be avoided and the remedy intended to be afforded. 32 P.2d at 695. Tracing the history of 26 O.S. 111 [26-111] (1971) reveals that originally this section was to provide that all political parties that existed in 1914 were to be recognized as a political party in Oklahoma and further, to provide guidelines for organization of a political party and limitations upon the existence of that party. Swindall v. State Election Board, supra, while approving the internal regulation of political parties by the members of that political party, also indicates that when one becomes a candidate he must submit himself to reasonable regulations or tests as may be required of candidates by the law under which our primary election system is held. 32 P.2d at 698. It reasonably follows that if the candidates are subject to those rules and regulations promulgated by the Legislature, a political party as an entity must also adhere to the rules and regulations prescribed by the Legislature. Specifically, the Supreme Court of Oklahoma has recognized that a political party may become dormant and lose its right to recognition pursuant to legislative limitation. For example, in the case of Craig v. Bond, 160 Okl. 34,56 P.2d 1014, the plaintiffs filed an original action in the Supreme Court asking for a writ of mandamus to compel the State Election Board of the State of Oklahoma to place the names of several plaintiffs on the November, 1932 general election ballot as candidates for the Socialist Party. The defendants alleged that at two successive general elections, the Socialist Party failed to receive ten percent of votes in said election, and that the said Socialist Party, therefore, in 1930, did not exist as a political party in the State of Oklahoma, 160 Okl. 35. It appears that the Socialist Party filed a petition in accordance with what is now 26 O.S. 229 [26-229] with 7,000 signatures upon it qualifying them for reinstatement or formation of a new political party. In this case, the petition was filed after the primary and before the general election and on that basis the request was turned down. As pertinent here, the facts revealed that in 1928 the Socialist Party at the general election held in Oklahoma failed to receive ten percent of the votes cast for the Republican Party. Specifically the Court noted that in 1928 the Socialist candidates for presidential electors received 3,924 votes and the Republican candidate for presidential electors received 394,046 votes. Further, in 1930 there were no filings for state office by any Socialist candidates. It appears that the Court was recognizing that in that case, the Socialist Party, in order to have remained a party for the 1932 general election, must have polled ten percent of the vote of the party receiving the highest number of votes at the presidential election of 1928. The same mathematical formula was followed in the case of Cooper v. Cartright,200 Okl. 456, 195 P.2d 290 where the Progressive Party attempted to file a petition to become a party in the State of Oklahoma for purposes of placing candidates on the general election ballot in 1948. In reviewing the history of the Progressive Party the Court noted at page 461: "It is a matter of common knowledge, and the public record shows, that thereunder five political parties were recognized as such in the general elections in 1912 and 1914, and that the Progressive Party was one of them. The records show that the Progressive Party, at the general election in 1912, received 224 votes, and at the general election in 1914, said Progressive Party polled or cast 4,196 votes for Governor. Therefore, by the plain provision of the statute and the facts within common knowledge of all, and as shown by the public records, said Progressive Party was entitled to and did receive recognition in this state. "By failing to receive the requisite number of votes for the party candidates in 1914 and by failure to nominate candidates, the Progressive Party became inactive, and by default to nominate candidates in 1916, the party became dormant. "26 O.S. 229 [26-229] (1941) applies to a party such as the Progressive Party which, having lost its right to recognition, seeks to regain recognition by filing a proper petition signed by 5,000 legal voters." (Emphasis added) The Court then traces the history of the Socialist Party and stated as pertinent here: "It is a matter of common knowledge and the record shows that the Socialist Party was recognized in this state in 1912 to 1928, inclusive. It failed to receive the requisite number of votes and lost recognition from 1928 to 1932." Therefore the Court in two separate instances dealing with two separate political parties recognized that the party failed to receive ten percent of the vote, (1) in the presidential election in 1928 (concerning the Socialist Party) and (2) in 1914 the Progressive Party failed to receive the requisite number of votes in a race for Governor. It is obvious that the Court is recognizing those portions of 26 O.S. 111 [26-111] (1971) where the two general elections that must be considered and the votes that must be computed are those of first, the party nominee for President who receives the highest number of votes, then in the following general election two years hence the party nominee who receives the greatest number of votes for Governor. The Court obviously construed those portions of the statute together in arriving at the interpretation that the votes of the Presidential and Governor's races in succeeding elections were the determining limitations on the continued existence of a political party. The only other discussion of the Supreme Court of the State of Oklahoma as to the meaning of the statute is found in the case of Craig v. Bond, supra, in the specially concurring opinion of Judge Andrews where he indicates at page 44 while examining the background leading up to the decision of the Court: ". . . It is nowhere shown in this record that the Socialist Party did not poll at least ten percentum of the vote of as many as three states other than Oklahoma at the last election held in such states. This court cannot presume that a political party failed to poll that percentage of votes, and, in the absence of proof, this court cannot say that the Socialist Party was not a political party within the legislative definition thereof and entitled to have candidates for presidential electors placed upon the primary ballot at the primary election in 1932. "I am of the opinion that by the language of Section 5648, supra, the existence of a political party is not defeated by its failure to cast five percentum of the entire vote cast in this state and that its existence is dependent upon the vote in at least three of the states. So long as a political organization polls at least ten percentum of the vote of as many as three other states at the last election held in such states, in my opinion, it is a political party within the definition of a political party as prescribed by the Legislature of this state. It seems to me that that section, when taken as a whole, can be given no other logical construction." The above cited dicta is not controlling in that it was in no way involved in the decision of the Court or contained in the majority opinion. Therefore, it cannot be considered as precedent and does not overrule the rule of law laid down by the Court. It seems to us that the proper interpretation as recognized by the Oklahoma Supreme Court in the case of Craig v. Bond, supra, and Cooper v. Cartwright, supra, is that for a party to remain a political party within the meaning and intent of 26 O.S. 1971 111 [26-111] that party, at the general election that follows the election of President of the United States and Governor of the State of Oklahoma, must receive ten percent of the votes the successful nominee of those two offices received in those two succeeding elections. The contrary interpretation would place the burden on the State to show that in at least 47 other States the American Party did not poll ten percent of the votes of the successful nominee of those States in the last two general elections. The burden of forming political parties is not on the State nor do we believe the burden is on the State to prove that a party has no right to remain a party in Oklahoma by the votes in other States. Simply the vote or, as it is here, the lack of votes in Oklahoma should be the deciding factor. It appears that the three State qualification was intended by the Legislature to be an aid to those interested in forming a political party. It likewise appears clear that the Legislature intended the limitation to be applied was that of elections within the State for a party to remain a party in the State. It is, therefore, the opinion of the Attorney General that your question be answered as follows: A political party in the State of Oklahoma to remain a political party, must receive ten percent of the votes cast for the party receiving the highest number of votes in two general elections following each other involving the election of the President of the United States and the Governor of the State of Oklahoma. Specifically, the American Party must have received ten percent of the votes cast in the 1970 general election for the Democratic nominee for the Office of Governor of the State of Oklahoma or to have received ten percent of the votes cast for the Republican nominee for President of the United States in the 1972 election. As regards your second question, assuming, for the purposes of this opinion, that the American Party is no longer a party, then a voter is incapable of being registered as a member of the American Party and still vote in the primary election in the State of Oklahoma. This necessarily follows because the State Election Board has the authority to refuse to accept filing of candidates for office representing the American Party since those filings would be contrary to law. This action by the State Election Board has been approved by the Oklahoma Supreme Court in the case of Martin v. County Election Board of McClain County, 206 Okl. 597, 245 P.2d 714. If the voters registered as members of the American Party otherwise satisfy the requirements to vote in a general election in Oklahoma then they should be allowed to vote for the candidates of their choice since political party affiliation is no longer a factor in a general election. (Robert H. Mitchell)