## SWINDALL v. STATE ELECTION BOARD.

No. 25474.    April 24, 1934.

Charles Swindall, pro se.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

BUSBY, J.    This is an original action in mandamus commenced in this court by the plaintiff, Charles Swindall, to compel the State Election Board to recognize him as a candidate for the Republican nomination as Justice of the Supreme Court of Oklahoma, subject to the action of the Republican voters in the July primary.

We are concerned in this case with the validity, interpretation, and effect of chapter 62, S. L. 1933, the title of which reads:

"An act relating to elections; providing form of notification and declaration for candidates for state and county office; fixing time of filing notification and declaration and time of withdrawals; repealing section 5755 and section 5756, O. S. 1931."

The pertinent provisions of section 1 of the act which bear directly upon the issues in the case at bar read:

"Section 1. Any qualified elector who is a member of a political party, and who has affiliated with and supported the nominees of the political party at whose hands he seeks the nomination. shall have his name printed on the official ballot of his party for an office to which he is eligible, in any primary election. upon filing with the proper officer. within the time provided by law, notification and declaration of candidacy. Said

notification and declaration shall be in the following form, and shall be filled in as to all the requirements therein contained, and the declarations therein shall be subscribed and sworn to by the person making the same, before any officer qualified to administer an oath."

"Said notification and declaration shall be in the following form:

### Notification and Declaration

(portions of the declaration not pertaining to the issues in this case are omitted)

"I believe in the principles of said (name of party) party, and intend to support its principles and policies, and vote for its nominees at the coming general election, and that I have affiliated with such party and that I supported its nominees at the last state-wide general election, or was prevented from doing so by reason of (state reason here)."

In compliance or asserted compliance with the provisions of chapter 62, supra, the plaintiff has tendered to the State Election Board for filing, a notification and declaration of candidacy from which it appears that he is an elector of this state; a member of the Republican party, registered as such; and that he possesses the qualifications essential to become a justice of this court. His notification and declaration of candidacy constitutes a literal compliance with the notification and declaration prescribed by chapter 62, supra, except that portion thereof which relates to matters concerning his past acts in supporting the nominees of his party and his present intention concerning his future acts in that respect. The portions of petitioner's notification and declaration touching upon these matters are as follows:

"I believe in the principles of said Republican party, and intend to support its principles and policies and vote for its nominees in the coming general election, **except as hereinafter stated,** and that I have affiliated with such party, and I supported its nominees at the last state-wide general election, **except as hereinafter stated,** or was prevented from doing so by reason of **my better judgment and due deliberation as an American citizen which caused me to support a nominee of the Democratic party. * * *"**

Referring to the exceptions, the notification and declaration contains the following additional statements:

"At the last general state-wide election, exercising the right of suffrage as a qualified elector under the Constitution and laws of the state of Oklahoma, I cast my ballot for a Democratic nominee for county office in my county for the reason that in my opinion he was better qualified to fill the office for which he was nominated than was the candidate nominated by the Republican electors at the primary for the same office. * * *

"I may desire to vote for some candidate nominated by the Democratic party that I feel is better qualified and more competent to fill the office for which he is nominated than the person nominated by the Republican party, and reserve this constitutional right and privilege guaranteed to me by the Constitution of the state of Oklahoma, and therefore refuse to swear or affirm that I will support all the nominees of the Republican party."

When the petitioner's declaration and notification was tendered to the State Election Board it was rejected. The board assigned the following reasons for such rejection:

"(1) That he voted in the last state-wide general election, but did not support all of the nominees of the Republican party in said election, as required by chapter 62, of the Oklahoma Session Laws of 1933.

"(2) That he did not swear that he intends to vote for the nominees of the Republican party at the coming general election, as required by said chapter 62, supra; and

"(3) That his notification and declaration tendered to the Secretary of the State Election Board was not in the form prescribed by chapter 62, supra."

The plaintiff was notified of such rejection and that his name would not be printed on the ballots for the coming primary election. He brings this action in mandamus to compel the State Election Board to accept his tendered notification and declaration and to print his name upon the official ballot at the primary election as a candidate for the Republican nomination for Justice of the Supreme Court.

The two questions to be decided in this case are:

1. Is a member of a political party, possessing the qualifications essential to hold a public office, ineligible to become the nominee of his party for that office by reason of having voted for a nominee of an opposing political party at the last state-wide election, his reason for having voted for such opposing party nominee being that in the exercise of his better judgment he believed the nominee of the opposing party better qualified to hold the office than the nominee of his own party?

2. Is such a political party member disqualified to become the nominee of his party for public office because, in declaring his intention to support the nominees of his own party, he qualifies his declaration by re-

serving the right in the exercise of his judgment to vote for a nominee of an opposing party in the event he believes such opposing party nominee better qualified than the nominee of his own party for the same office?

These questions arise under chapter 62, S. L. 1933, supra. A proper answer to each of them involves an interpretation of that legislative enactment and a determination of its purpose and effect. To a limited extent we must likewise deal with questions touching upon the validity of the act by reason of its subject-matter as well as the manner in which it was enacted. We shall first consider that portion of the petitioner's declaration in which he qualifies his statement of intention to support the nominees of the Republican party at the next general election by reserving to himself the right to vote for a nominee of an opposing political party, if in the exercise of his judgment he believes such opposing party nominee to be better qualified to hold the office which he seeks than the nominee of plaintiff's party. Does this reservation disqualify him as a candidate for the Republican nomination to public office? The effect of the qualification was to reserve unto himself a right and privilege which under the Constitution and laws of this state is guaranteed to him as an elector. Section 4, art. 2, of our state Constitution provides:

"No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage by those entitled to such right."

Section 6, art. 3, of our state Constitution provides:

"In all elections by the people the vote shall be by ballot, and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot, and may, when necessary, provide by law for the registration of electors throughout the state or in any incorporated city or town thereof, and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

The effect of these provisions is to confer upon the individual voter the right to vote as he pleases. He cannot be deprived of the exercise of this privilege and right by a pledge previously taken. In considering a similar problem and recognizing the question involved, this court said in the 5th paragraph of the syllabus in Dove v. Oglesby, 114 Okla. 144, 244 P. 798:

"While the right of suffrage does not inhere in the mere right to live or to exist, yet it does inhere in the right of self-government, and the free exercise of such right is essential to the maintenance of self-government."

The signing of the declaration provided by the statute does not in any way interfere with the free exercise of the right of suffrage. This declaration is in reality a statement of present intentions as distinguished from a pledge or obligation as to future acts. It creates no enforceable legal obligation on the part of the candidate to vote for his party nominees in the general election. On the contrary, it merely requires him to declare that his present intentions are in accordance with recognized party principles.

A similar question was before the Texas court in the case of Westerman et al. v. Mims, Sec. of State, 111 Tex. 37, 227 S. W. 178. The analysis of similar pledge by the court in that case appears in the 5th and 6th paragraphs of the syllabus, which read as follows:

"The pledge of one who participates in a primary to support the nominee required by Rev. St. 1911, art. 3096, pledges him to uphold that nominee by aid or countenance, but he is under only a moral obligation to do so, since the obligation is not one that can be enforced by the courts, and a 'moral obligation' in law is defined as one that cannot be enforced by action, but which is binding on the parties who incur it in conscience and according to natural justice.

"Rev. St. 1911, art. 3096, requiring a participant in a primary to pledge support to the nominee, is not to be construed to prevent changes in party fealty unless the legislative intent to that effect is plain, since such construction would raise grave doubt as to the validity of the statute as an interference with privilege of free suffrage guaranteed by the Constitution."

We therefore conclude in connection with this particular objection to the plaintiff's notification and declaration of candidacy that in reserving unto himself the right to vote for a nominee of an opposing political party he merely declared in writing a constitutional right which he would have in any event, and that such declaration tendered by him did not authorize the State Election Board to reject the same.

We next consider the second qualification in plaintiff's notification and declaration, namely, that portion of the same wherein plaintiff asserts that he voted for a nominee of the Democratic party at the last statewide general election. In considering this question we are squarely confronted with the

necessity of determining whether or not the statute in question prohibits any person who "scratched his ticket" at the last general election from becoming a nominee of the party with which he is affiliated. Within this question we first consider the narrower question: Was it the intention of the lawmaking body to prescribe a test for determining the qualifications of candidates for party nomination, authorize the State Election Board to pass upon the qualifications for party nominations and to prevent all persons from becoming candidates for such party nominations whose application and declaration reflects on its face that the candidate voted for a nominee of the opposite political party?

In considering this question it is important to first examine the title of the act. Reference to that portion of the act which we have already quoted discloses that no mention is made and no indication contained therein that the act prescribes a test for determining the right of a candidate to file for party nomination. The title recites that it pertains to elections. Elections refer to the machinery whereby sovereign voters determine their choice of candidates or their choice of officeholders. The use of this word in the title of the act in no wise indicates that the body of the act will contain a test to determine the qualifications of candidates for party nomination. The remainder of the title of the act indicates only that a form of declaration for candidates to execute shall be thereby prescribed. Section 57, art. 5, of our Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revised, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The effect of the foregoing constitutional provision is to render invalid and unconstitutional any part or portion of an act which cannot be reasonably anticipated or said to be included within the title of the act. Applying this constitutional provision to the act in question, grave doubts arise concerning the validity of the act if we should interpret the declaration therein contained as also prescribing a test and authorizing the State Election Board to determine the qualification of candidates for party nominations.

In the body of the prescribed declaration there is a blank space to be filled in by the candidate stating any reason why he may have been prevented from supporting his party nominee during the last general election. The presence of this blank space exhibits an intention on the part of the Legislature to authorize persons seeking to become party candidates and who did not in fact support all of the party nominees during the last state-wide general election to give an explanation for their failure to do so. It contemplates that if they did not vote for the party nominee that they state the reasons for their failure. At no place in the act do we find any authority conferred upon the State Election Board to pass upon the sufficiency of the reasons given; nor do we find any provision in the act whereby the Legislature undertakes to define what constitutes a reasonable excuse for failure to support the party nominees. In the absence of such provision it seems a fair and reasonable assumption from a consideration of the entire act that the sufficiency of the reason given may be passed upon by the voters themselves at the primary election, and not by the election board. This interpretation and construction of the act excuses the absence of any provision in the title stating that the act itself shall prescribe the qualifications of candidates for party nomination. We are aware in arriving at this construction that it would appear to conflict with certain provisions incorporated in the first sentence of the act. Reference to that sentence might make it appear that it was the intention of the Legislature that only those who had supported all of the nominees of their party during the previous general elections could file as candidates for party nomination. However, the adoption of such a construction would completely ignore the presence in the declaration of the space in which the candidate is directed to insert the reason why he did not support the nominees of his party. It is a familiar rule of statutory construction that statutes should be construed so as to give force and effect to each and every part and provision thereof, and that a harmonious construction should be adopted. Similarly a canon of statutory construction by which we are guided in this case is, that where a statute is susceptible of more than one construction, one construction of which would render it unconstitutional, the other render it valid and enforceable, the latter will be adopted. In case of ambiguity or uncertainty in the meaning of a statute the subject-matter upon which it op-

erates, the effect of the various possible interpretations, and the object sought to be accomplished thereby are important factors to be considered in determining the construction to be adopted. This principle of statutory construction is expressed in 25 R. C. L. page 254, in the following language:

"Where the language of a statute is ambiguous, it is proper to consider the conditions with reference to the subject-matter that existed when it was adopted, the occasion and the necessity for the law, and the causes which induced its enactment, or, in other words, the mischief sought to be avoided and the remedy intended to be afforded."

In the application of this rule to the case at bar we must consider the situation upon which the act was intended to operate. It deals directly with political parties and regulates the manner in which candidates shall seek party nomination.

A political party has been defined to be a number of persons united in opinion and organized in the manner usual to the then existing political parties, State ex rel. Howard v. Metcalf, 18 S. D. 393, 67 L. R. A. 331, at 333, 100 N. W. 923.

In this jurisdiction it is defined by statute as follows:

"A political party is an affiliation of electors representing any political organization which at the next general election preceding polled for President or Governor at least five per centum of the entire vote cast for either of said respective officers, or any such political organization which may have polled at least ten per centum of the vote of as many as three other states at the last election held in such states." Section 5648, O. S. 1931.

At an early date in the history of our nation groups of electors banded themselves together to champion by their joint efforts, ideals and policies of government and to nominate and select candidates for public office. These groups were voluntary associations and became known as political parties. Usually their candidates or nominees were selected at party conventions. In the early history of our nation their existence was not recognized nor their conduct regulated by either constitutional or statutory provisions. As time went on experience taught that party conventions are often subject to corrupt manipulation. Often the candidates chosen as party nominees did not represent the popular choice of the party members. Due to the abuses of the convention system a general tendency has been manifested in modern times to vest the important party function of choosing candidates in the voters of the party by means of primary elections. It is obvious that the policies and candidates of a political party should express the wishes of a majority of the voters thereof. It is likewise clear that the enactment of laws which prescribe qualifications for party nominees in addition to the qualifications required by law for the office which they seek limits and restricts the party voters in their choice of candidates to those who may possess the added qualifications thus imposed. Whether the Legislature possesses unlimited authority to enact such laws when not expressly limited by constitutional provisions and how far such laws may go before they may be said to constitute an unwarranted interference with the rights of the party voters to choose as their candidate any person qualified for the office, are questions which are worthy of grave consideration. State v. Wells, 92 Neb. 337, 138 N. W. 165, 41 L. R. A. 1088; Matter of Callahan, 200 N. Y. 59, 93 N. E. 262.

There is a vivid distinction between a law which provides additional qualification for party candidates and a law which provides for a declaration of facts by a candidate for party nomination, from which the party voters may determine the intent and character of the candidate's party affiliation.

That the will of the party voters should ultimately govern and be directly expressed in choosing party candidates is contemplated and recognized by our Constitution. Section 5 of article 3 provides:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county and municipal officers, for all political parties, including United States Senators: Provided, however, this provision shall not exclude the right of the people to place on the ballot by petition any nonpartisan candidate."

Thus our Constitution recognizes political parties and provides for a mandatory primary election. Pursuant to the mandate of the Constitution, the Legislature has performed its duty by providing for "closed" (as distinguished from "open") primary system. Only the qualified electors affiliated with a political party are permitted to vote the ballot of their party in primary elections. Voters are required to register and must declare their party affiliation under oath. Sections 5655, 5656, O. S. 1931. Appropriate provisions are made for a change in politics by the individual voter. Section 5658, O. S. 1931. No requirement is made that the individual party voter must have supported

all or any part of the nominees of his party at the preceding general election in order to participate in a primary election.

It is a matter of common knowledge, of which we may take judicial notice and which may be verified by an examination of the election returns of the state during the past decade, that a very substantial portion of partisan voters frequently support and vote for one or more of the nominees of an opposite political party. This practice is commonly known in political circles as "scratching the ticket." It is condemned by many, condoned by others, and commended by some.

In connection with this practice two distinct and opposing schools of thought have arisen. A large element in both of the major parties believe and advocate that party loyalty condemns this practice and that the partisan elector should be governed in the general election by the will of a majority of his party as expressed at the primaries. Those who adhere to this view urge that the individual voter who is unwilling to abide in all respects by the expressed will of his party is in reality an independent and should be so classified. They urge that it is even more important that a party nominee who is a standard bearer of the party and who seeks to share the fruits of party victory should present a staunch example of party loyalty. The party loyalty of those who place party allegiance above all other considerations cannot be questioned and needs no arguments to establish its sincerity.

On the other hand, there is a substantial element in both of the major parties who proclaim their adherence to the fundamental principles of their party, announce their intention to support its nominees generally, but reserve and exercise the right to depart from the narrower path of rigid party allegiance to support and vote for a nominee of an opposite party in the event their conscience so dictates or their judgment so demands. Usually this view is justified by its advocates on the theory that controlling importance should be attached to the personal character of the nominees, and that party allegiance should be subordinate to governmental welfare. Advocates of this liberal view are found among the recognized leaders as well as the rank and file in both major parties. The petitioner in this case has been prominently identified in Republican party circles in this state during the last two decades. According to his declaration now before us, he adheres to the last above view. President Roosevelt, the acknowledged national leader of the Democratic party, says in his recent book "On Our Way" that it is a "Happy sign for the future of America, because of the increasing tendency of the thinking voter to say, 'I belong to this or that party, but actually I almost always split my ticket'." No further reference need be made to establish the existence of a substantial element in political parties who believe in "splitting the ticket."

We are not judicially concerned with the respective merits of the positions taken by the advocates of the two conflicting views which are above set out. We are judicially concerned, however, with the fact that these two conflicting views are entertained by substantial elements in both of the major parties. We are called upon in this case to determine whether chapter 62, Session Laws of 1933, prevents the voters of a political party from selecting as the party nominee one of their number who adheres to the last view above stated.

Without reference to the views above stated, partisan voters believe that one who seeks the honors of public office should not be permitted to further his own ambition by falsely clothing himself in the garb of a party member and obtaining a party's support under the false pretense that he is in good faith a member thereof. One of the evils of the primary system has been the ease with which the politically ambitious may flaunt the colors of a political party to which they recognize no actual allegiance. The administration of governmental affairs and policies is in a large measure a party responsibility. Party voters usually prefer to delegate responsibility to members of their party whose fidelity to party principles and allegiance to party organization is beyond question. However, what constitutes party allegiance and fidelity is a question which in the last analysis must be answered by a majority of the party voters themselves. There should be no criticism leveled at a legislative enactment which is designed to require candidates for party nomination to reveal pertinent facts from which the voters may intelligently determine the sincerity, quality, and nature of their party allegiance. Such laws place the party voters in possession of information which assists them to properly exercise their power to determine the worthiness of the respective candidates. If the views of a candidate on matters relating to party allegiance are to be a controlling factor in determining the party nominee, that factor will find its proper expression in the voice of the sovereign electors speaking through the tabulated returns of the primary election. We, therefore, conclude that it was the purpose and intention of the Legislature

in passing the act under consideration to cause candidates for party nomination to make a statement of facts touching upon the party affiliation and allegiance in order that the voters of their party might intelligently determine the quality of their party allegiance and determine therefrom the worthiness of the individual candidate to be the standard bearer of his party. The sufficiency of the reason given by the petitioner in this case for not supporting one of the nominees of the Republican party during the last statewide general election is a question to be passed upon by the voters of that party, and the State Election Board exceeded its authority when it undertook to determine from the answer given that plaintiff in this case was ineligible to become a candidate for the Republican nomination.

Viewed and interpreted as a requirement that candidates for party nomination shall divulge for the information of the voters the facts from which the voters may intelligently determine the nature, qualities, and character of their party affiliation, the law under consideration is free from objection. The plaintiff concedes in his brief that it is within the power of the Legislature to prescribe reasonable regulations governing the conduct of primary elections and the manner in which candidates shall seek party nomination. The right of the Legislature to prescribe reasonable regulations has been approved by this court. In the case of Craig v. Bond, 160 Okla. 34, 15 P. (2d) 1014, this court said in syllabus 5:

"It is the province of the Legislature to enact laws relative to the right to vote and the regulation of political parties. Such laws should be reasonable and not destructive to some constitutional right. It is for the Legislature to provide the manner by which candidates may have their names placed upon the ballot for any primary, special, or general election, and so long as there is no interference with any constitutional inhibition, this court has no right to interfere."

It must be remembered and recognized in connection with the interpretation which we have placed upon the law in question that, while every qualified elector in the state has an absolute right to vote as he pleases, he does not have an absolute right to become a member of any political party unless he in good faith affiliates therewith. While the right to vote may be said to be an absolute right, the right to seek public office as a party nominee may be qualified and reasonably restricted, and a requirement that a candidate for party nomination submit information concerning his party affiliation would not seem to be an unreasonable requirement, since the voters of a political party are manifestly entitled to such information, which will enable them to determine the party affiliation and allegiance of the candidate who seeks to become their nominee.

It is further argued that the statutory requirement that a candidate for party nomination state whom he supported in the last general election violates the secrecy of the ballot. The declaration prescribed by the statute under consideration does not require the candidate to state for whom he voted in the last general election. On the contrary, the words, "supported the nominees of the political party at whose hands he seeks the nomination," are used in section 1 of the act. The word "vote" is included in that portion of the declaration requiring him to state his intention respecting the nominees of the party at the next general elections. As a matter of fact one might affiliate with a party whose nomination he seeks and "support its nominees" without having voted for one of the nominees on the ticket. Practically the same clause was considered by the Kentucky court in the case of Hager v. Robinson, 157 S. W. 1138. The body of the opinion contains a careful analysis and complete answer to the objection urged. We quote:

"While any attempt to compel the individual voter to disclose how or for whom he voted at a regular election would not be allowed, there is no prohibition against a voluntary disclosure by him unless it be made to affect the conduct or result of a regular election. But when a voter offers himself, as did E. W. Robinson, as candidate for nomination to an office at the hands of a political party with which he claims membership, proposing to have his claim to such nomination determined by the electors of the party at a primary election held under the Primary Election Law of the state, he must submit himself to such reasonable regulations or tests as may be required of candidates by the law under which the primary election is held; and if one of these tests requires him to state, in order to get his name on his party's ballot, that he supported the nominees of the party, of which he seeks a nomination, at the the last regular election, he must do so, and the disclosure, even if it should give the names of the persons for whom he voted, will not violate the provisions as to the secrecy of the ballot contained in section 147, Const. The tests to which the candidates are subjected by the Primary Election Law of this state are contained in section 6 of the act. One of them is that he

must have affiliated with the party whose nomination he seeks, and also have supported its nominees at the last regular election. The words 'supported its nominees' do not necessarily mean that the candidate should have voted for such nominees. Without voting at all he may have given them actual and even active support, by advocating their claims, getting out the vote and in other ways, yet by accident or unavoidable casualty have been prevented from attending the election. Therefore, to require one to say that he supported the nominees of his party at a former election would necessarily compel the admission on his part that he voted for them; for this reason, if no other were apparent, it cannot be said that the test here imposed invades the secrecy of the ballot."

We perceive no constitutional objection to the act under consideration. It requires the filling in and filing with the Secretary of the Election Board a sort of questionnaire asking for certain information. Filing of these questionnaires with the Secretary of the Election Board enables the board to keep track of the filing and make proper preparation for printing the ballots. After the information required by the questionnaire is furnished it becomes a public record. If the questionnaire substantially complies with the form required, then it is the duty of the Secretary of the Election Board to place the name of the applicant on the ballot. The voters have access to the information as to the party history of the candidate. Then under our theory of political parties and of government, the voters have the inherent and ultimate right to pass upon the regularity and sincerity of any candidate's political affiliation. It is for them to determine whether or not the candidate has been faithful to his party, and they make their decision at the polls. We therefore conclude that the plaintiff's tendered notification and declaration of candidacy constitutes a substantial compliance with the requirements of chapter 62, S. L. 1933, and that he is entitled to be recognized as a candidate for the Republican nomination for Justice of the Supreme Court. For which reasons, peremptory writ of mandamus is hereby ordered to be issued.

RILEY, C. J., CULLISON, V. C. J., and KING, Special Justice, and BAYLESS, J., concur. ANDREWS and OSBORN, JJ., concur in conclusion. McNEILL and WELCH, JJ., dissent.

ANDREWS, J. (specially concurring). I concurred specially in the opinion of my associates in this case rather than generally.

I agree with my associates that political parties existed prior to their recognition by legislative enactment and that when first organized their purposes were to champion ideals and policies of government. I agree with them that party conventions were often subject to corrupt manipulation and that often candidates chosen as party nominees did not represent the popular choice of the party members. I agree with them that the policies and candidates of the political parties should express the wishes of a majority of the voters thereof. I deny the applicability of any of those facts to the issues in this case. While conventions may have been, in some instances, doubtlessly were, manipulated, they were no more so than the primaries under which we are now operating, and the delegates to the convention were doubtlessly as honest as the electors at the present primary. The convention system had at least one distinct advantage, for under that system ideals and policies of government were agreed upon before the nominees were selected, while, under the present system, the nominees are selected and their ideals and policies become the ideals and policies of the convention, though, in many instances, not the ideals and policies of the electors of the political party. Under the primary system, the ideals and policies of one of the nominees of a political party may be, and oftentimes are, entirely different from the ideals and policies of another of the party nominees. Those facts are important in the consideration of the legislative enactment in question. That enactment provides that any qualified elector who is a member of a political party, and who has affiliated with and supported the nominees of the political party at whose hands he seeks the nomination, shall have his name printed on the official ballot of his party for the office to which he is eligible in any primary election, upon filing with the proper officer, within the time provided by law, a notification and declaration of candidacy. I do not understand what was meant by the statement "who has affiliated with and supported the nominees of the political party." I can understand why there should be a requirement of affiliation of a candidate with his political party, but I do not understand why there should be any requirement of "affiliation" of a candidate with the nominees of his political party. My observation has been that, in many instances, there was no "affiliation."

The act provides a form of "notification and declaration of candidacy." That form provides that, for the purpose of having the name of the candidate placed on the official primary election ballot, he swear that he believes in the principles of his political

party and intends to support its principles and policies and vote for its nominees at the coming general election. There is no requirement for belief in the policies, but only in the principles, yet a candidate is required to swear that he will support its policies. What are those policies? He cannot know at that time if the policies meant are those to be thereafter adopted. That language must relate to the belief and intent at the time of the execution, verification, and filing of that declaration. To hold otherwise would be to hold that the candidate is required to swear that he will support the principles and policies of his political party as those principles and policies are subsequently adopted, for, under the existing system, a political party has neither principles nor policies until its convention or its nominees adopt them. Its convention does not adopt them, under our state practices, until after the primary has closed. Its candidates do not adopt them until after they have ascertained who their political opponents are to be. Both the convention and the candidates adopt principles and policies in accordance with the nominations made by their opponents. For instance, when the candidate files his declaration of candidacy, he may well believe that the principles and policies of his party are, and that they will be, the principles and policies of his party as they exist at that time or as they were in the last election, and he may find at the time of the election that the principles and policies of his party are materially different from what they had theretofore been. Certainly the Legislature did not intend that the candidate for political office should stultify himself by swearing in April that he would support the principles and policies adopted by his political party thereafter that are opposed to his principles and his ideas as to the proper policies of government, where the principles and policies of the political parties at the election are different from the principles and policies of his party at the time he filed his declaration of candidacy. To give the act that interpretation would require the nominee to withdraw when the principles and policies of his political party were changed, or violate his oath by refusing to support those principles and policies. I agree with my associates that the intention referred to in the act is the intention at the time of the filing of the declaration of candidacy.

The form of notification and declaration further provides that the candidate shall swear that he supported the nominees of his political party at the last state-wide general election, "or was prevented from doing so by reason of (state reason here)." If the legislative purpose was to prevent those who did not support all of the nominees of his political party at the last state-wide general election from becoming candidates for nomination by their political party, the act is retroactive and operates to prevent one from becoming a candidate because of prior acts which were legal. I call attention to the fact that in one place the form reads "intend to support its principles and policies, and vote for its nominees," and in the other "I supported its nominees." The word "vote" does not appear in the latter place and its omission must be given effect. There is nothing in the act which requires any statement or averment that the candidate voted for the nominees of his party at the last state-wide general election, and the requirement of a statement with reference to his support of the nominees of his political party at the last state-wide general election is in the alternative, that is, he is required to state that he supported them, or that he was prevented from doing so by reason of, in the language of the statute, "state reason here." There is nothing in the act which authorizes the State Election Board to consider the reason stated and to refuse to accept the declaration of candidacy because of the reason stated. For that reason I must agree with my associates in their conclusion with reference to that provision of the act.

Article 15 of the Constitution of Oklahoma prescribes the form of oath of public officials. It requires them to subscribe to an oath that they will support, obey, and defend the Constitution of the United States and the Constitution of the state of Oklahoma, and that they did not knowingly violate any election law of the state. The legislative enactment in question must be construed in connection with that constitutional form of oath. The Constitution of the state of Oklahoma provides that this state shall be "dry." The principles and policies of a political party may be in favor of a "wet" state. One who having sworn in a declaration of candidacy that he would support such principles and policies of a political party would find himself, if elected, confronted with the constitutional oath of office which requires him to support the Constitution of the state, which is opposed to such principles and policies. Certainly the Legislature intended no such condition to exist. The most that it could have intended was that the candidate would support the principles and policies of his political party

where those principles and policies were in accordance with the Constitution and laws of the state and nation.

The act is indefinite and uncertain in that it fails to distinguish between the principles and policies of a national political party and a state political party. Referring again to the "wet and dry" question, a national political party might have "wet" principles and policies, while the state political party of the same name might have "dry" principles and policies. Which principles and policies are meant by the legislative enactment? It applies to both state and federal offices. Is it the national principles and policies with reference to the tariff, or the local principles and policies with reference thereto?

The act is indefinite and uncertain as to how the principles and policies of a political party are to be determined, and no provision is made as to when they are to be determined. Are the principles and policies of a political party those stated in the platform adopted at the convention, or those stated in the platforms of its candidates for office? If the latter is correct, which of its candidates for office? Is the candidate for nomination to state that he will support the principles and policies of the nominee for Governor, or the nominee for Lieutenant Governor, the nominee for Governor, or the nominee for the Legislature?

One element of a political party may believe in the executive domination of both the legislative and judicial departments. Another element may believe in the independence of the three departments of government. The theory of the nominee for Governor may be entirely different from the theory of the nominee for the Legislature. Are the nominees for the Legislature who believe in the independence of the legislative department of government to be required to swear in April that they will support the principles and policies of the Governor who believes in the domination of the legislative department? One element of a political party may believe in the authority of the executive to use the military for the purpose of superseding civil authorities, while another element may believe in the constitutional provision that the military should always be subordinate to the civil authorities and that the courts of the state should always be open to the people. Which of those theories does the applicant for filing swear to? In the case of a declaration from one who has served in an official capacity, are not his past acts to determine his present

intent? It has been well said that "Your acts speak so loud, I cannot hear your words." One element of a political party may believe in the use of elective officers in the performance of the duties of the office, while another may believe in the power of the executive to employ private citizens for the purpose of superseding regularly elected officials in the performance of their duties. Which of those principles does the candidate swear to?

Conditions at this time are such that the nominees of political parties disregard party platforms in making the race for office and after they are elected to office. It was once said that political party platforms were erected for the purpose of securing office, but that condition no longer exists, and candidates of political parties make their campaign for office on platforms materially different and contrary to the platforms adopted by their political parties.

Until the Legislature provides by law how the principles and policies of a political party are to be determined, and until it requires a determination of those principles and policies prior to the time of the filing of the declarations of candidacy, it cannot make effective its requirement that a candidate swear he will support those principles and policies at the coming general election.

In my opinion, the act must fail because of its indefiniteness and uncertainty in material provisions which make it impossible for any candidate for office to know what is meant thereby.

McNEILL, J. (dissenting). Plaintiff seeks a writ of mandamus to compel the State Election Board to file his notification and declaration for nomination to the office of Justice of the Supreme Court of the state of Oklahoma from Supreme Court Judicial District No. 4, which he submitted for filing with the secretary of said board.

It is my view that plaintiff is not entitled to this writ for the reason that his notification and declaration does not substantially comply with the requirements of chapter 62, Session Laws 1933.

The State Election Board is a nonjudicial administrative body. It acts ministerially and had no authority to accept the filing of the tendered notification and declaration in the form it was presented, as it appears on its face to be a plain departure from the requirement of said chapter 62.

Section 5754, O. S. 1931, being article 8

of chapter 29, dealing with elections, provides:

"Political parties in this state shall select or nominate their respective candidates for the various national, state, district, county and township offices by a primary election or elections as herein provided for, and no candidate's name shall be printed upon the official ballot for any general or special election at which all or any of the national, state, district, county and township officers are to be elected unless such candidate shall have been nominated as herein specified; provided, that this provision shall not exclude the right of nonpartisan candidates to have their names printed upon such official ballots as hereinafter provided for."

The act in question prescribes that any qualified elector who is a member of a political party, and who has affiliated with and supported the nominees of the political party at those hands he seeks the nomination, shall have his name printed on the official ballot of his party for an office to which he is eligible in any primary election upon filing with the proper officer within the time provided by law a *notification and declaration of his candidacy.*

The act also prescribes the form of the notification and declaration, and that the declaration therein which is required to be subscribed and sworn to by the person making the same. The act also provides:

"For the purpose of having my name placed on the official primary election ballot as a candidate for nomination by the . . . . (name of party) Party, I . . . . . . . (name in full as desired on the ballot) do solemnly swear (or affirm) that I reside at No. . . . . Street, in the City of . . . . State of Oklahoma, and that I am a registered . . . . (party) voter in . . . Precinct, city of . . . . that I believe in the principles of said . . . (name of party) party, and intend to support its principles and policies, and vote for its nominees at the coming general election, and that I have affiliated with such party and that I supported its nominees at the last statewide general election, or was prevented from doing so by reason of . . . (State reason here); that, if nominated as a candidate of said . . . . party at the said ensuing election, I will accept such nomination. * * *"

It is plainly apparent that the notification and declaration which plaintiff submitted does not comply with these terms, and if it does not, plaintiff is not entitled to the writ. Before a writ of mandamus should issue, the party applying must show

a clear legal right to the same. The State Election Board could not have been authorized to file the notification and declaration as submitted. The Legislature had spoken and it was its duty to comply with the legislative enactment.

The form prescribed by law provides for exceptions for not supporting the nominees of the party with which the elector is affiliated at the last state-wide general election. No limitation is placed upon the reason which the elector may assign for not supporting the nominees of his party, but such reasons should be germane to the question. It certainly should not be a recitation of abstract political questions containing matters wholly foreign to that issue. Any reason pertinent thereto suffices to comply with this requirement. There is nothing in the language, to wit, "that I have affiliated with such party and that I supported its nominees at the last state-wide general election, or was prevented from doing so by reason of * * *" which in any wise attempts to reveal how the elector voted. The elector is not required to reveal how he exercised his right or privilege of voting at the last state-wide general election. An elector can be affiliated with a general party and support its nominees without exercising the privilege of voting. It is not necessary to vote for the nominees of a party in order to support them. Voting for and supporting the nominees of a party are not synonymous and convertible terms. See State ex rel. McMillan v. Schmahl (Minn.) 167 N. W. 797.

Mr. Merriam, Associate Professor of Political Science in the University of Chicago, in his work on Primary Elections, edited in 1909, in discussing primary legislation said:

"Another important feature of the primary legislation of this period was the development of a definite test of party allegiance. * * *

"Thus the West Virginia law of 1891 provided that no one should vote 'who is not a known, recognized, heretofore openly declared member of the party included in the terms of the call.' In Wisconsin the voter must swear that 'he did not vote against such regular candidates at such last preceding election.' In Minnesota the form of the test required was 'That he voted with the political party holding the primary election at the last election; that he intends to vote for and support the nominees of the convention.' It was also provided that no one should vote in more than one political party during one calendar year. In Michigan, he must declare 'I am a (name of

party) and a resident of this ward for the last ten days, and am in sympathy with its aims and objects, and will support its principles and objects.' In California the affirmation covered a 'bona fide present intention of supporting the nominees of such political party or organization at the next ensuing election.' The California law also contained the requirement that the voter must not have signed a nominating petition before the primary, or sign one after it. In Massachusetts the voter participating in the primaries must be a 'member of the political party holding the same, and intend to support its candidates at the polls, at the election next ensuing.' A significant provision was the requirement in a Massachusetts law of 1894 that no one was to be debarred from participating in the primary because he had supported an independent candidate. Perhaps the fairest test was that furnished by the New York law of 1898. This required the voter to swear:

"'I am in general sympathy with the principles of the . . . . party; that it is my intention to support generally at the next election, state or national, the nominees of such party for state or national offices; and that I have not enrolled with or participated in any primary election or convention of any other party since the first day of last year." (pp. 36, 37, and 38.)

On page 69:

"* * * The demand for the direct primary grew out of the general discontent regarding social and industrial conditions. The party system was regarded as an important element in these conditions, and popular opposition converged upon the convention as the source of much of the evil it was desired to eliminate. Startling disclosures respecting the betrayal of public trust by party leaders aroused the people to a crusade for responsible party government."

Page 143:

"As the party primary becomes more and more like an election, the more important does the question of party membership become. What constitutes a Republican or a Democrat? and how shall a satisfactory legal test be made? Originally this was a matter over which the party authorities possessed exclusive jurisdiction, and which they might regulate and control in their discretion. The Republican committee decided what evidence was necessary to establish a right to participate in Republican primaries, and the Democratic committee defined and determined the essentials of Democracy. The abuse of this power in many cases led to legal regulation of the party. The most frequent test required is an expression of intention to support the party candidates in the ensuing election, coupled with a statement of past support of, or affiliation with, the party. In Michigan the test includes

a declaration of sympathy with the objects of the party. In New Jersey, the voter must state that he supported a majority of the party's candidates at the last election, and intends to support the candidates named in the primary. South Dakota requires previous support of the party, belief in a 'substantial part' of principles of the party, and intention to support the candidates nominated. Pennsylvania requires a declaration that the intending voter supported a majority of the party's candidates at the last election. The Missouri law of 1901 merely required that the voter answer affirmatively the question, Are you a . . . . . ?"

Page 145:

"The Mississippi Law of 1902 requires the voters to declare that they intend to support the nominations in which they participate, have participated with the political party holding the primary within the two years preceding, and are not excluded from such primary by regulations of the party state executive committee. In Louisiana the voter must declare whether or not he is a member of 'such political party,' and whether he will support the nominees of said primary election."

After reviewing various contentions in favor of the primary system, and objections relating to the party test, Professor Merriam concluded (on pages 149 and 150) as follows:

"On the whole, if any test is required, it would seem sufficient to exact from the voter a statement that he is in general sympathy with the principles of the party, that he intends to support its candidates generally at the next election, and that he has not participated in the primaries of any other party (except a municipal party) within, say, one year. The system of party enrollment or registration is likely to eliminate a desirable element from each party, and seems to lay undue stress on the rigidity of party organization, although this may be to some extent offset by liberal provisions for supplementary enrollment or change of party registration. The chief objections to this system would then disappear; but also its chief merit, namely, that of keeping out the unwelcome and unscrupulous invaders of the party. This illustrates very well the inherent difficulty in all tests, namely, that of letting down the bars for the honest, discriminating voter without admitting, at the same time, the dishonest and the venal. It appears, then, that no solution of the problem of the party test has yet been reached, and that much more practical experience and much more mature reflection will be necessary before the proper sort of a regulation can be devised."

In addition to the foregoing I find that section 7079, Burns' Annotated Indiana

Statutes, prescribes the following affidavit from a challenged voter:

"* * * that I supported a majority of the candidates on the ——— ticket at the last election, at which I voted, and will support a majority of the candidates of that party at the next election."

Under the General Laws of Oregon, 1901, section 13, it is provided in reference to the oath required from a challenged voter, in part:

"* * * that you either voted at the last general election for the majority of the candidates of the ——— party (as the case may be) or intend to do so at the next general election."

From Professor Merriam's careful analysis it is seen that tests of party loyalty are not confined to any particular section of this nation. They are deeply intrenched in the laws of many of the states, North, East, West, and South.

In the case of Wilkinson v. Henry, 221 Ala. 254, 128 So. 362, involving an injunction to restrain the holding of a primary election which was sought on the ground that the executive committee of the party holding such primary had exceeded its powers in prescribing the qualifications to vote at said election, there appears to be found an exhaustive review of statutes relating to the test of party loyalty and affiliation as to the voters in the dissenting opinion of Mr. Justice Thomas.

Mr. Justice Thomas quotes, in part, from Viscount Bryce in "American Commonwealth," 2d vol. c. 60, pp. 55, 56, 57, as follows:

"The usual test is, Did the claimant vote the party ticket at the last important election, generally the presidential election, or that for the state government? If he did not, he may be excluded * * * In many primaries voters supposed to be disagreeably independent are kept out either by the votes of the existing members or by the application of these strict tests. * * *

"Every member of a nominating meeting, be it a primary or a convention of delegates, is deemed to be bound by the vote of the majority to support the candidate whom the majority select, whether or no an express pledge to that effect has been given. * * * Of course, no compulsion is possible, but long usage and an idea of fair play have created a sentiment of honour (so-called) and party loyalty strong enough, with most people and in all but extreme cases, to secure for the party candidate the support of the whole party organization in the district.

It is felt that the party must be kept together, and that he who has come into the nominating meeting hoping to carry his own candidate must abide by the decision of the majority. The vote of a majority has a sacredness in America not yet reached in Europe."

Then, after reviewing statutes from the states of Wisconsin, California, New York, Florida, Massachusetts, Illinois, Idaho, and Oregon, said:

"The foregoing will suffice as reasonable statutory tests of loyalty and affiliation as to voters; and will illustrate that, in the enactments of the Legislature and construction of primary laws, much must be left to the Legislature to determine; and that so long as it can be said that the test of loyalty and affiliation by law is (1) apt, and (2) reasonable, it has been permitted to stand (Ladd v. Holmes, 40 Ore. 167, 66 P. 714, 91 Am. St. Rep. 475) as prescribed by statute. * * *"

In the case of State v. Mitchell, 121 La. 374, is was said:

"It is the very essence of a primary that none should have the right to participate in it but those who are in sympathy with the ideas of the political party by which it is being held. Otherwise the party holding the primary would be at the mercy of its enemies, who could participate for the sole purpose of its destruction by capturing its machinery or foisting upon it obnoxious candidates or doctrines. It stands to reason that none but Democrats should have the right to participate in a Democratic primary, and none but Republicans in a Republican primary. A primary is nothing but a means of expressing party preference, and it would cease to be that if by the admission of outsiders 'ts results might be the very reverse of the party preference."

In the case of Francis v. Sturgill, 174 S. W. 753, the Court of Appeals of Kentucky said:

"Political party organizations are maintained as aids to good government, and if they accomplish their mission in this state, there must be a reasonable compliance with the requirements of the primary election statute; otherwise, electors would be deceived and defrauded of their right to vote for candidates of their own or their party's choice. To permit appellee to profit by the nomination he secured would be an injustice to the voters of the Republican party, as well as all other voters of Knott county, whether of other political parties or independents. The fact that the subterfuge by which his name was printed on the ballot under the Republican device, and as its nominee, might have been prevented by the members of that party is beside the ques-

tion. Whether they were informed of it in time to have prevented it does not appear. At any rate, it could not have been prevented by appellant, who was a member of a different party and its nominee for the same office; but its illegality can be raised by him in the contest instituted by appellee for the office, on the ground that it destroyed the validity of the votes cast for the latter at the election, as it enabled him to practice a deception on the Republican voters of Knott county and obtain their votes under the false pretense that he was a Republican: whereas, he was when posing as their nominee, has been at all times since, and is now professedly a Democrat."

Summarizing: Observe the strictness from the state of Wisconsin: The voter must swear that he did not vote against such regular candidates at such last preceding election. Then turn to the test as applied to intent, Minnesota, "that he intends to vote for and support the nominees of the convention"; California, that he has a bona fide present intention of supporting the nominees of such political party or organization at the next ensuing election; Massachusetts, that he intends to support its candidates at the polls at the election next ensuing; New York, "it is my intention to support generally at the next election, state or national, the nominees of such party for state or national offices"; New Jersey, that he intends to support the candidates named in the primary; South Dakota, that he intends to support the candidates nominated.

I must conclude that the test of intent is no legislative innovation. It is nothing more than an endeavor to attach reasonable regulations upon the voter for the purpose of regulating party allegiance and affiliation. If these safeguards for the security and purity of party principles can be mantled over the individual voter, certainly reasonable details can be required from a candidate who voluntarily offers himself to a party with which he claims affiliation. In so presenting himself he seeks the support of that party to place him before the people as one of its standard bearers. If by this method he desires the support of his party, why should not the party in turn be able to demand of such candidate a bona fide intention from him to support the nominees it eventually selects.

It seems to me that his privileges and rights are no stronger or more persuasive than those of the members of his party.

Primary elections concern primarily the rights of the parties, and only incidentally are those of the individual candidate or in-

dividual elector involved. State ex rel. Miller v. Flaherty, 23 N. D. 313, 136 N. W. 76.

In the case of Commonwealth v. John Rogers & Others, 181 Mass. 184, 187, 63 N. E. 421, that illustrious jurist, Mr. Justice Holmes, while Chief Justice of the Supreme Court of Massachusetts, said:

"It would be a strange inversion to say that no laws can be passed upon the mode of voting at a preliminary meeting held only for the purpose of getting names printed on an official ballot when laws can be passed affecting the final vote. The Legislature has a right to attach reasonable conditions to that advantage, if it has a right to grant the advantage."

It is my opinion the act in question offends no provision of our state or federal Constitutions.

In case of East Donegal Township Election, 18 Pa. Dist. Rep. 498, it was said:

"The object of these elections (referring to primary elections) is to secure a candidate for whom all the members of that particular party shall vote at the general election, and rules that regulate the primary are binding upon all the members of the party. Persons who become members of a political party, like any other organization, must conform to the rules established for its government, and must necessarily surrender a portion of their rights for the good of the party, and conform to party usages, in arriving at a choice."

In the case of State ex rel. Miller v. Flaherty, 23 N. D. 313, 136 N. W. 76, it was said:

"The primary election statutes have as a general purpose the regulation of the franchise of electors within party limits. The elections so provided concern primarily the rights of parties, and only incidentally those of the individual elector."

It is peculiarly within the power of the Legislature to regulate elections including the nominations of political parties, and apt and reasonable details relating to the nomination of party candidates. See State v. Ballot Commissioner, 82 W. Va. 645.

In the case of Winston v. Moore, 244 Pa. 447, 91 Atl. 520, it was said:

"The power to regulate elections is legislative, and has always been exercised by the law-making branch (General Assembly since the foundation) of the government. * * *

"The cases hereinbefore cited, and many others not cited, show conclusively that our courts have never undertaken to impale legislative power on points of sharp distinction in the enactment of laws intended to safe-

guard the ballot and to regulate the holding of elections. Indeed, so far as we are now advised, no act dealing solely with the details of election matters has ever been declared unconstitutional by this court. This for the reason that ballot and election laws have always been regarded as peculiarly within the province of the legislative branch of government, and should never be stricken down by the courts unless in plain violation of the fundamental law. * * *

"We cannot agree with the learned counsel for appellants that the provision of the act which requires a candidate to file with his petition an affidavit stating his residence, his post-office address, his election district, the name of the office for which he is a candidate, and other matters relating to his candidacy, are such restrictions upon the rights of the elector as to justify the courts in declaring the act void. This duty is enjoined upon the candidate, and not upon the elector. The rights of the voter are only incidentally involved. Under the old law certificates of nomination and nomination papers had to be verified by the affidavit, not of the candidate, but of those who had the authority or knowledge required to make it. The effect upon the rights of the individual voter was practically the same under the old law as it is under the new act. No man need be a candidate for office unless he chooses to be, and, if he desires to become a candidate, it is difficult to see what constitutional right of the individual elector has been subverted by requiring a candidate to make affidavit to facts pertinent to his candidacy. This is what the act of 1913 requires, and certainly details of such a character relating to the nomination of candidates are clearly within the proper exercise of legislative power. The argument on this branch of the case could be addressed very properly to the Legislature, but it is not convincing to us when asked to declare the act in question void on constitutional grounds."

Party lines are strictly drawn under our mandatory primary system. Members of one party cannot vote for candidates of another party under our primary elections.

Much stress, though exclusive of the immediate issue, is stated about scratching tickets as if the present law inhibits such practice at the general election. This question is foreign to the determination of the instant question. The law in question has nothing to do with the right or privilege of a qualified elector in casting his vote for whomsoever it pleases him to do so in the general election. This right or privilege of the voter is in no wise impaired. He can vote for whomsoever he pleases in the general election in satisfaction of his own conscience. The purpose of "voting for the man" is in no wise impaired, inhibited, or in any manner involved herein.

However, I view another phase of the act which is not considered in the majority opinion. It is my opinion that the expression, "its nominees," should have been construed by this court. Had this court so construed those words, it would have assisted the State Election Board in the furtherance of its ministerial duties, and would have set to rest the immediate question. It is my theory that the correct interpretation to place upon those words, "its nominees," is to the effect that those words do not mean all the nominees of any particular party. The word "its" is the possessive case, or the possessive adjective of "it", meaning of or belonging to it. Webster's International Dictionary. In other words, the expression, "its nominees," as applied to the Republican party, means nominees of it (the Republican party). The words, "nominees" of the "Republican party," do not and necessarily cannot mean all the nominees of the Republican party. Those words, however, do mean more than one nominee. It seems reasonable to conclude, in the absence of an expression like "all of its nominees," or words of similar import, that it was not the intent of the Legislature to make those words, "its nominees," all inclusive. It seems to me that a fair and reasonable interpretation would be that those words support and embrace the thought expressed by the New York statute, to wit, that it is the intention of the candidate to support generally at the next general election the nominees of the party from which he seeks his nomination, or that it is his intention to support a majority of the candidates of that party.

It appears to me that the act is entitled to apt and reasonable interpretation which will aid and assist in making it valid. Can it be said to be unreasonable and violative of any party privilege, or infringement of any right or privilege of a qualified elector, who voluntarily presents himself as a candidate of a political party, to require of such candidate certain bona fide informative details as a test to his party candidacy for the sake of securing party affiliation and loyalty, when such a candidate covets the support of such party? If such a candidate has no sympathy with party organization and should manifest no intention at the time he files his notification and declaration to vote for the nominees of his party from which he seeks support, surely such views would be

inconsistent with party principles. The history of political organizations has been that the individual view yields to the will of the majority for the aid and good of time-honored sentiment and principles of party affiliation and party loyalty in the ultimate aid of good government. The majority opinion offers no aid or guide to the State Election Board and candidates as to what is required in the notification and declaration on the question as to the intent to vote for the nominees of the candidate's party. This question, since it has been raised, should have been decided.

I conclude that the statute in question is not unconstitutional. The information provided for in the statute is in the proper exercise of legislative powers. That portion of the statute requiring plaintiff to swear that he intends to vote for the nominees of his party at the coming general election should have been construed by the court to mean that the Legislature did not intend to require plaintiff to say that his present intention was to vote for all the nominees of his. party, but that such language should have been construed in the light of the language expressed in the New York, Indiana, or Oregon statutes, to which I have referred herein. Under such a construction the writ should have been denied, and plaintiff permitted to file with the Secretary of the State Election Board another notification and declaration conformable with the construction which the court should have placed upon the act in question.